NYE-SCHNEIDER-FOWLER COMPANY, APPELLANT, V. BOONE
COUNTY, APPELLEE.

FILED FEBRUARY 19, 1916. No. 19445.

1. **Taxation**: PLACE OF TAXATION: PERSONALTY. Under section 6314,
   Rev. St. 1913, personal property ordinarily is required to be listed
   and assessed where the owner resides, but "property having local
   situs, like grain elevators, lumber yards or any established busi-
   ness, shall be listed and assessed at the place of such situs."

2. ———: ———: ———: CREDITS. Where a corporation operates, in
   several counties, stations for the purpose of selling lumber, fuel,
   grain and live stock, each station should be assessed as an inde-
   pendent business, and its net credits thereat should be ascertained
   by deducting the indebtedness incurred in conducting the business
   at such station from the gross credits thereof. Rev. St. 1913, secs.
   6314, 6329.

APPEAL from the district court for Boone county: FRED-
ERICK W. BUTTON, JUDGE. *Affirmed.*

*Courtright, Sidner & Lee,* for appellant.

*W. J. Donahue,* contra.

LETTON, J.

This is an appeal from the decision of the board of
equalization of Boone county with respect to the assess-
ment for taxation of credits of the plaintiff. The district
court sustained a general demurrer to the petition of
plaintiff and dismissed the appeal. Plaintiff appeals.

In substance, the petition alleges that plaintiff is a
Nebraska corporation with its chief office and place of
business at Fremont, in Dodge county; that it is in the
business of operating stations for the purpose of selling
lumber, building material and fuel, and for the purpose
of buying and shipping grain and live stock; that one of
such stations is at Albion, in Boone county; that on the
1st day of April, 1915, it had owing to it at Albion on book
accounts the sum of $13,769.04; that the purchases of
lumber, building material and fuel for all its stations are

made at the chief office in Fremont, and are paid from
that office; that in order to carry on the business it is at
all times necessary to purchase goods on credit and also
to borrow large sums of money; that on April 1, 1915,.
the total amount owing to plaintiff at all of its stations
was less than $110,000, and at the same time it was in-
debted to persons outside of the state for merchandise in
the sum of $25,500, and for money borrowed and payable
within the state for use in the business more than
$643,000; that its total indebtedness for such purposes
was at least $1,500,000; that it filed with the county asses-
sor of Boone county a schedule of its book accounts in
Boone county in the sum of $13,769.04, and the schedule
also recited that the total amount owing to plaintiff at
that time was about $102,000 as stated, and its total lia-
bilities were more than $1,500,000. It is also alleged that
the county assessor assessed the value of its book accounts
at $5,500, and refused to make any deduction for debts;
and that on appeal to the county board of equalization the
assessment made by the assessor was approved.

The sections of the statutes which govern the matter
are as follows:

Section 6290, Rev. St. 1913: "The term 'personal prop-
erty' includes every tangible and intangible thing which
is the subject of ownership and not real property as de-
-fined in the next preceding section."

Section 6291: "The word 'property' includes every kind
of property, tangible or intangible, subject to ownership."

Section 6314, governing the place of listing, so far as
applies, is as follows: "Personal property, except such
as is required in this chapter to be listed and assessed
otherwise, shall be listed and assessed in the county, pre-
cinct, township, city, village and school district where the
owner resides, except that property having local situs, like
grain elevators, lumber yards or any established business,
shall be listed and assessed at the place of such situs."

Section 6329, provides: "The property of banks or
bankers, or other companies, and merchants, except as

hereinafter specifically provided, shall be listed and taxed in the county, township, precinct, city, village and school district where the business is done."

It is elementary that "movables follow the person," in the absence of statutes providing otherwise, and that the credits of plaintiff would be assessable at the domicile of the corporation but for the statute. But the quoted sections provide otherwise, and the idea that personal property shall be listed in the locality where it is found, and not at the residence of the owner, is borne out by section 6315, as to the place of assessment of live stock or personal property connected with the farm; by section 6316, as to live stock in charge of an agistor or caretaker, or brought into the county for grazing purposes; by section 6317, as to property of manufacturers in the hands of agents; by section 6320, as to improvements on leased public lands; by section 6321, as to property in transit intended for a business. In fact, an inspection of the whole law shows the clear intention on the part of the legislature to give the people of the taxing subdivision in which personal property is situated and used for the profit of the owner the right and privilege of collecting taxes upon it, so that it may bear its proper share of the expenses of government at that place.

Plaintiff asserts that, since its general indebtedness incurred in carrying on its business at its head office and at all its branches exceeds the amount of its general credits in such places in the state, it has no net credits to be assessed. This would, undoubtedly, be true but for the provisions of section 6314: "Property having local situs, like grain elevators, lumber yards or any established business, shall be listed and assessed at the place of such situs," and of section 6329, that merchants shall be taxed where the business is done. It seems evident that the legislature intended that each lumber yard or other established business should be considered as a separate entity.

99 Neb. 25

In *Hoagland v. Merrick County*, 81 Neb. 83, the court said: "Under the rule here announced (that net credits alone are taxable), it is clear that any just debts owing by Hoagland at the time the return in question was made, provided the same arose out of, or were connected with, the lumber yard at Central City, should have been set off against the items of credit."

Plaintiff must accept either one horn of the dilemma or the other. If its credits are all taxable at Fremont, then from the general credits should be deducted the general indebtedness. If the credits are taxable in Boone county, the indebtedness to be deducted must arise out of the business in that county. By returning the gross credits for taxation in Boone county, plaintiff conceded that credits are taxable locally. In this event the deductions to which such credits are subject in order to ascertain their net amounts must also grow out of the local business. In this case, without attempting to separate, or apportion, or show the amount of indebtedness which grew out of the business in Boone county, the plaintiff undertook to offset its general credits. The credits of the plaintiff in Boone county are not subject to taxation in Dodge county where its headquarters are situated. Neither are the debts which it has incurred in Dodge county, or any other county in the state, to be deducted from the credits which have accrued to the business in Boone county. Whatever debts may have been incurred in the purchase of grain, lumber, or for any other purpose legitimately connected with the conduct of the business in Boone county, are proper to be deducted from the credits in that county, but this is as far as the deduction of indebtedness may go. Since no such indebtedness was shown to the assessor, he and the county authorities were justified in refusing to make any deduction.

The judgment of the district court is

AFFIRMED.

SEDGWICK, J., not sitting.