SAMUEL P. DELATOUR, APPELLEE, V. R. H. SMITH ET AL., APPELLANTS.

FILED MARCH 26, 1928. No. 25154.

*E. E. Richards* and *W. I. Tillinghast*, for appellants.

*Frank A. Dutton, contra.*

Heard before GOSS, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ., and PAINE, District Judge.

PAINE, District Judge.

Samuel P. Delatour, the plaintiff and appellee, brought an injunction suit against the sheriff of Garden county and the treasurer of Arthur county to restrain the sheriff

of Garden county from seizing his property under a distress warrant, issued by the county treasurer of Arthur county, for delinquent personal taxes, and in a trial of the case in Garden county, Nebraska, the district court granted a permanent injunction to the plaintiff, and the defendants have appealed. This is rather an unusual case, in that there is little dispute between the parties as to the facts in the case.

It appears from the pleadings, bill of exceptions, and the findings of the trial court that Mr. Delatour is a banker and stockman, and that his principal place of business is at a large stock ranch which he owns in Garden county, Nebraska, where he has resided for 41 years; that upon December 15, 1923, he moved 573 head of two-year-old steers from said ranch in Garden county into Arthur county to feed up 600 tons of hay which he had previously bought in Arthur county, and that said cattle remained in Arthur county under the charge of hired men as caretakers until April 15, 1924, at which time they were moved back to his stock ranch in Garden county, Nebraska; that on or about April 9, 1924, D. D. Cole, the county assessor of Arthur county, Nebraska, assessed said two-year-old steers as the property of the plaintiff, Delatour, in Arthur county, Nebraska, and that taxes were levied on said cattle as the personal property of the plaintiff in Arthur county, amounting to $186.50 for the year 1924; that the county assessor of Arthur county, Nebraska, duly notified the plaintiff, Delatour, of such assessment by mailing him a copy of the assessment on April 9, 1924, the same day it was made, and that he had notice and knowledge thereof before said cattle were removed from Arthur county to his Garden county ranch, and that thereafter the county board of equalization of Arthur county sat for the purpose of equalizing taxes after having given due and legal notice of the same, but that at no time did the plaintiff, Delatour, appear before the board of equalization of Arthur county nor file any objections to the assessment or levy of said personal taxes; that he made no protest

thereon, as by law provided and allowed, and made no effort to protect his alleged rights before said board, or in any manner, in Arthur county, Nebraska; that the two-year-old steers were moved back to Garden county about April 15, 1924, and later in the same month, to wit, April 19, 1924, these same steers with other cattle were given in by the owner for assessment in Garden county, Nebraska; that thereafter he sent by mail to the officers of Arthur county a certificate of the county clerk of Garden county that the 573 head assessed in Arthur county had been scheduled by him for assessment in Garden county; that afterwards he paid the taxes in Garden county, but has at all times refused to pay the taxes assessed upon the steers in Arthur county, nor did he protest or appear before the board of equalization and object thereto in any way except by the bringing of this injunction suit.

1. It is agreed that section 5917, Comp. St. 1922, should govern this case, and said section reads as follows: "Live stock in charge of an agistor, caretaker, or nonresident owners on the first day of April of the year for which the property is required to be listed, and not connected with the farm, shall be assessed where so kept; and any live stock which shall be brought into any county of this state for grazing purposes between the first day of April and the first day of July of any year shall be assessed by the assessor or by the county board in such county and in the proper taxing district unless the owner of said live stock produce a certificate from the county clerk, or other proper officer, showing that such property has been assessed elsewhere."

The appellants contend that the said steers brought into Arthur county in this case, and which were there on the first day of April, should be assessed in that county, and the county assessor so assessed them, and that at the time of this assessment they had not been assessed elsewhere, and that the owner was notified of the assessment on the same day it was made, but that he did not appear before the board of equalization for a hearing on this assessment, nor did he pay his taxes under protest or otherwise to the

Arthur county authorities, nor did he ever make any complaint of the regularity of any of the proceedings in relation thereto.

On the other hand, the plaintiff and appellee contends that the clause in the statute cited, *"and not connected with the farm,"* is the important point in this case, and that these two-year-old steers were connected with his ranch in Garden county, and were simply moved into Arthur county in December of 1923, and remained there several months, for the sole purpose of eating up the 600 tons of hay which he had purchased there.

Said section 5917 and the clause quoted, "and not connected with the farm," would in its plain intent and purpose protect the owner of a farm from assessment of his tractor, binder, threshing machine, work horses, or milk cows, if they happened to be in use away from his farm upon April 1, but it is strongly contended by the defendants that such natural and clear purpose of the legislature should not be magnified and extended to work an injustice to certain range counties or elsewhere.

In the case of *Diemer & Guilfoil v. Grant County,* 76 Neb. 78, some 1,500 head of cattle were assessed in Hyannis precinct, school district No. 1, where the taxes were high. Plaintiffs insisted that these cattle should be assessed at the home ranch about 15 miles in the country, which was in school district No. 3, where the taxes were much lower. The small ranch adjoining the town of Hyannis produced some hay and had a winter and summer range, and cattle were driven in there to use this feed. The same cattle were driven back to the home ranch at times to be dipped and for other purposes, but soon the same or other cattle to the amount of about 1,500 would be brought back to the small ranch at Hyannis. About May 1 of each year all of these cattle would either be shipped out or returned to the home ranch for summer grazing. This case turned upon the section of the statute which is now section 5928, Comp. St. 1922, which provides that, if property may be listed in several places in the same county, the place may be de-

termined by the county board. This court upheld the board in assessing these 1,500 head of cattle in Hyannis precinct, school district No. 1. The same reasoning would require the assessment in the case at bar to be made April 1 where the steers were being fed, even though they might be taken back to the headquarters' ranch later.

In the case of *Jandt v. Sioux County*, 73 Neb. 381, certain range horses were delivered to the owner, Jandt, in Box Butte county, on April 7, in which county he voluntarily listed them for taxation and paid the taxes. However, his agents, who had the horses in charge on April 1, listed the horses for taxation in Sioux county some time after they had delivered up possession of them to the owner, Jandt, and also after he had scheduled them for taxation in Box Butte county. Commissioner Letton held in this case that, as the horses were not in Box Butte county on April 1, they were not taxable in that county, and that the agents had the right to list the horses for taxation even after they had passed out of their keeping, if they had them in their possession in Sioux county on April 1; that the owner was under no legal or moral obligation to list them in Box Butte county, where he paid taxes upon them, and the fact that he did so was no ground of defense against the enforcement of the taxes in Sioux county, where the property was properly and legally located on April 1, and where it was listed for assessment and taxation.

While there has been a slight change in the statute since this decision was entered, yet it does not affect the merits of the case. It is made clear by Judge Letton that the owner should pay taxes to the county where his live stock is being fed on April 1, and in the case at bar, if plaintiff desired to avoid paying taxes in Arthur county, he could easily have removed them to the home ranch the last day of March.

No other Nebraska case is cited to the court that is as nearly in point, but several cases are cited from other states. In the case of *Clampitt v. Johnson & Miller*, 17

Tex. Civ. App. 281, it was held that cattle owned and kept in one county, but which were taken over into another county on November 2 for pasturage purposes upon lands leased for that purpose, but with the intention of moving them back to the main ranch not later than April 1 if the pasturage became sufficient in the home ranch, were properly taxable in the county where they were actually located on January 1.

In the case of *Morse v. Stanley County*, 26 S. Dak. 313, it was held that horses ranging in a county between June 1 and November 1 were properly assessable in such county on June 1, and states if under the facts as found here these horses were not taxable in Stanley county, then if a person lives in one county, or his foreman or superintendent lives therein, and from such point manages and conducts ranches throughout the whole state, no matter if such ranches cover large parts of other counties, still all of his property, no matter of how great value, would be taxable only in the county where he or his foreman lives, while as a matter of fact such county would have no equitable right to any of such tax whatsoever.

Cattle and sheep may be required by statute to be assessed where they are kept or where they have been taken to graze or to be fed. 2 Cooley, Taxation (4th ed.), sec. 451.

"Where the owner of cattle resides in one county and his cattle are kept on a farm in another county, which farm is entirely disconnected from the home of the owner, such cattle are properly taxed in the county where kept." Opinions Attorney General, Nebraska, 1913-1914, p. 191.

In the Wyoming case of *Kelly v. Rhoades*, 9 Wyo. 352, it was held that, where the owner drove a band of sheep into the state and in eight weeks drove them a distance of 500 miles, allowing them to graze on inclosed pastures and the public domain, they acquired a situs within the state and could be taxed therein; that, even though the owner claimed to be driving them directly across the state, this was not an interference with interstate commerce.

"A nonresident who brings cattle into the Osage Indian reservation for grazing purposes between March 1 and September 1 is liable for taxes assessed and levied thereon for that year by the county officials of the county to which said reservation is attached for judicial and taxing purposes, even though such cattle have been listed for taxation in another state for the same year, and prior to the time they were brought into such reservation." *Lasater & Noble v. Green,* 10 Okla. 335.

The trend of authorities in cattle feeding states indicates that bands of sheep or herds of cattle being prepared for market are a distinct entity from operations on the home ranch and may be taxed for the benefit of the county they are being fed in on the taxing date. As a typical illustration, let us assume that an extensive live stock owner residing near Grand Island, in Hall county, Nebraska, has his headquarters ranch there; that he owns, leases and controls ranch lands, consisting of both summer and winter ranges, in Cherry, Sheridan, Grant, and Arthur counties; that upon these lands he runs trainloads of cattle or sheep at various times in the year, which live stock may be all shipped to his headquarters ranch to be "topped off" before being shipped to market. He absolutely looks to the officials of the counties in which he ranges this live stock to be vigilant to protect it from thieves, to run down and prosecute to the limit any offender who butchers one of his animals, to promptly pay bounty upon any wolves caught killing his sheep, and to prosecute all trespassers hunting on his range in violation of law. A construction of section 5917, Comp. St. 1922, which considered all this live stock as "connected with the farm" in Hall county and to be scheduled there only for taxation, might require the Hall county assessor to go 200 miles from his county and drive a range 50 miles long to properly check the live stock listed in Hall county, yet on the small salary allowed an assessor this is impossible. In such a case such live stock should be assessed in the county where it is found upon April 1 by the local assessor, who is on the ground, familiar

with all the facts, and can easily and correctly check the same, and the taxes so assessed should be paid into the county upon which the burden and expense rests for guarding said live stock. In this connection Judge Letton concisely said:

"In fact, an inspection of the whole law shows the clear intention on the part of the legislature to give the people of the taxing subdivision in which personal property is situated and used for the profit of the owner the right and privilege of collecting taxes upon it, so that it may bear its proper share of the expenses of government at that place." *Nye-Schneider-Fowler Co. v. Boone County,* 99 Neb. 383.

2. Section 6018, Comp. St. 1922, states in its first section: "No injunction shall be granted by any court or judge in this state to restrain the collection of any tax, or any part thereof hereinafter levied, nor to restrain the sale of any property for the nonpayment of any such tax, except such tax or the part thereof enjoined be levied or assessed for any illegal or unauthorized purpose."

The taxes complained of should have been paid under protest and then an attempt made by plaintiff to get his money back in the manner provided by law. *Darr v. Dawson County,* 93 Neb. 93; *Burlington & M. R. R. Co. v. Seward County,* 10 Neb. 211; *Janike v. Butler County,* 103 Neb. 865.

The district court should have sustained the demurrer to the petition. The cause is hereby reversed, with instructions to dismiss the action at costs of plaintiff.

REVERSED.