IN RE ASSESSMENT OF CERTAIN LIVESTOCK AND OTHER PERSONAL PROPERTY OWNED BY ANDREW GOEBEL AND VIOLA GOEBEL, HUSBAND AND WIFE.
ANDREW GOEBEL ET AL., APPELLEES, V. THE COUNTY OF HOLT, NEBRASKA, ET AL., APPELLANTS.
108 N. W. 2d 406

Filed April 14, 1961. No. 34934.

*William W. Griffin,* for appellants.

*Julius D. Cronin* and *Edward E. Hannon,* for appellees.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, and BOSLAUGH, JJ.

SPENCER, J.

This case involves a determination of the proper place of listing livestock and machinery for taxation as between two taxing districts in Holt County. Andrew Goebel and Viola Goebel, appellees, hereinafter referred to as taxpayers, reside in the village of Stuart, where they own a home and operate a grocery store, butcher shop, and cold storage plant. They likewise own about 3 acres 3 blocks from the home, equipped with corrals, shed, and 3 granaries. This tract of 3 acres is adapted and used for the keeping and feeding of livestock. It is normally used for a short term feeding operation in connection with the business. All of this property is situated within the boundaries of school district No. 44.

Taxpayers rent 480 acres of hay and pasture land 4 miles from the village of Stuart. This land is equipped with fences, corrals, feeders, a shed, and a loading

chute which taxpayers use for cattle operations. There are no other buildings, and no one resides on the premises. All this land is located within the boundaries of school district No. 136.

On January 1, 1960, taxpayers owned 69 head of cattle, several horses, 2 trucks, a line of hay machinery, and 30 tons of hay, all a part of their stock and haying operation. Fourteen heifers were temporarily in town on that date, but were later moved to the farm. Except for these heifers, some hay, and some of the machinery, all of the property was located in school district No. 136. Taxpayers listed all of the livestock, the machinery, and the feed for assessment in school district No. 136. The county assessor changed this so as to list all of the property in school district No. 44. Taxpayers filed a protest with the county board, and, after a hearing, the board ordered the property assessed in school district No. 44. Taxpayers filed a petition in error in the district court. After a hearing, the district court overruled the order of the board and ordered the property assessed in school district No. 136 as originally listed.

The evidence indicates that the cattle are normally kept on the land in school district No. 136 and are cared for by the taxpayers and their son, who drive back and forth from the home in Stuart. It was taxpayers' custom, about February 1, when the cows started calving and the roads became difficult, to bring the cattle to Stuart for a short time. Taxpayers testified that most of the cattle raised were sold. They also purchased cattle from time to time at various sales. On occasions, some cattle, both raised and purchased, were fattened for a short period of time in school district No. 44, and were butchered and sold through taxpayers' store and locker plant. However, there is no evidence in the record that any of the 69 head on hand January 1, 1960, were intended for use in the store or locker business. The

machinery was all used exclusively to put up hay and to care for the cattle.

Section 77-1202, R. R. S. 1943, states the general rule that personal property shall be listed and assessed where the owner resides, except that property having a local situs shall be listed and assessed at that situs.

Section 77-1204, R. R. S. 1943, provides as follows: "When the owner of livestock or other personal property connected with a farm does not reside thereon, the same shall be listed and assessed in the county, township or precinct where the farm is situated. If the farm is situated in several townships or precincts, it shall be listed and assessed in the township or precinct in which the principal place of business on such farm shall be."

Section 77-1205, R. S. Supp., 1959, provides as follows: "Livestock in charge of an agister, caretaker, or nonresident owner, on January 1 at 12:01 a.m. of the year for which the property is required to be listed, and not connected with the farm, shall be assessed where so kept; and any livestock which shall be brought into any county of this state for grazing purposes between January 1 at 12:01 a.m. and July 1 of any year shall be assessed by the county assessor or county clerk, where he is ex officio county assessor in such county, and in the proper taxing district unless the owner of said livestock produces a certificate from the county clerk, or other proper officer, showing that such property has been assessed elsewhere." These two statutes establish specific statutory exceptions to the general rule that personal property shall be listed and assessed where the owner resides.

Section 77-1216, R. R. S. 1943, provides as follows: "Questions that may arise as to the proper place to list personal property shall be determined as follows:

"(1) If between several places in the same county, the place for listing and assessing shall be determined and fixed by the county board; and

"(2)  If between different counties, the place for listing and assessing shall be determined by the State Board of Equalization and Assessment.

"When fixed in either case, it shall be as binding as if fixed by specific statutory provision."

In interpreting this statute, we have held as follows: "This section makes it the duty of the county board to determine where within the county personal property shall be assessed, when questions arise, as in this case, and its decision will not be disturbed unless an abuse of discretion is shown." Diemer & Guilfoil v. Grant County, 76 Neb. 78, 107 N. W. 216.

The question involved herein, therefore, is whether or not the county board abused its discretion in directing the listing and assessment of all said livestock and machinery in school district No. 44. Taxpayers contend it it is an abuse of discretion because the county board did not follow the law with respect to the listing and assessment of the property.

The fact that taxpayers are engaged in another business in school district No. 44 has no bearing on the issue in this case. If the livestock is connected with that business, clearly it is not connected with the farm. The residence of taxpayers is determinative of the place where the livestock will be taxed only if that livestock does not come under section 77-1204, R. R. S. 1943, or section 77-1205, R. S. Supp., 1959.

Section 77-1204, R. R. S. 1943, will be controlling: (1) If the property in school district No. 136 constitutes a farm within the meaning of the statute; (2) if the livestock is connected with that farm; and (3) if the owner does not reside thereon.

While originally the term "farm" may have been used to refer only to land held under cultivation, the term now has a much broader meaning. As said in 35 C. J. S., Farm, p. 948: "* * * in the present day, both in England and the United States, a farm in its ordinary acceptation means any * * * tract of land, or a

number of small tracts, devoted wholly or partially to agricultural purposes or pasturage of cattle."

Clearly, Chapter 77, R. R. S. 1943, uses the term to mean a tract of land used for cultivation or production of crops of any nature, or the raising of any type of animal embraced within the term "livestock." With the development particularly of the western states, a large part of whose wealth consists of cattle, the word "farm" has acquired a somewhat broader meaning, and in its generic sense it has application to a stock farm as well as to one where grain is raised. Porter v. Yakima County, 77 Wash. 299, 137 P. 466.

There can be no question taxpayers were operating a farm in school district No. 136. Is the livestock connected with the farm? That certainly was the purpose of its operation, to raise and feed cattle. It should be evident that the livestock was connected with the farm.

As to the third point above, it is conceded that taxpayers do not live in school district No. 136, but are residents of school district No. 44. We said in Delatour v. Smith, 116 Neb. 695, 218 N. W. 731: " 'Where the owner of cattle resides in one county and his cattle are kept on a farm in another county, which farm is entirely disconnected from the home of the owner, such cattle are properly taxed in the county where kept.' " What is said about a county would be equally true as to the other assessing or taxing districts, including school districts.

As we view the facts in this case, it clearly falls within the provisions of section 77-1204, R. R. S. 1943. To reach the conclusion it did, the county board must have found that the farm in school district No. 136 was so connected with the business in school district No. 44 as to constitute only one unit. Appellants contend that is the situation, and insist that under the last sentence of section 77-1204, R. R. S. 1943, the finding of the county board must be sustained.

Taxpayers' operation in school district No. 44 was separate and distinct from those in school district No. 136 even if the 3-acre tract within the town of Stuart be considered a farm, which we do not decide. It is not in any way connected with the 480 acres in school district No. 136, to be considered as one farming operation. The two tracts were used for entirely separate and different operations. However, for convenience, taxpayers did during approximately 2 months of the year and after the taxing date, when it was necessary to protect the cattle, move them to the 3-acre tract. In any event, we do not believe this is the type of operation contemplated by the last sentence of section 77-1204, R. R. S. 1943.

Appellants suggest that this case is unusual and confusing; that different minds might come to different conclusions; and that the county board should be allowed some latitude in the exercise of its discretion. In answer, we quote the following from Greenberg v. Fireman's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772: "The word 'discretion' is one of variable meanings depending on its use. In Tingley v. Dobly, supra (13 Neb. 371, 14 N. W. 146), we quoted with approval this definition by Lord Mansfield: 'Discretion when applied to a court of justice means sound discretion guided by law. It must be governed by rule, not by humor; it must not be arbitrary, vague, and fanciful, but legal and regular.' As used in the connection here presented it means that the court in its ruling must be guided and governed by applicable law. It means the application of statutes and legal principles to all of the facts of a case."

We find the following language in Delatour v. Smith, *supra*, to be appropriate herein: "The trend of authorities in cattle feeding states indicates that bands of sheep or herds of cattle being prepared for market are a distinct entity from operations on the home ranch and may be taxed for the benefit of the county they are being fed in on the taxing date. * * * 'In fact, an in-

spection of the whole law shows the clear intention on the part of the legislature to give the people of the taxing subdivision in which personal property is situated and used for the profit of the owner the right and privilege of collecting taxes upon it, so that it may bear its proper share of the expenses of government at that place.' Nye-Schneider-Fowler Co. v. Boone County, 99 Neb. 383."

We hold that the facts in this case do not support appellants' contention. Consequently, the trial court was correct in holding that the county board abused its discretion. The judgment of the trial court is affirmed.

AFFIRMED.

SIMMONS, C. J., participating on briefs.