IN RE ASSESSMENT OF THE PERSONAL PROPERTY OF SVOBODA AND HANNAH, A PARTNERSHIP.
SVOBODA AND HANNAH, A PARTNERSHIP, APPELLANT, V. BOARD OF EQUALIZATION OF PERKINS COUNTY ET AL., APPELLEES.
142 N. W. 2d 328

Filed April 22, 1966. No. 36153.

216

Frank B. Svoboda, for appellant.

Frederick E. Wanek, for appellees.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and BRODKEY, District Judge.

BRODKEY, District Judge.

This is an appeal from the judgment of the district court for Perkins County sustaining the decision of the county board of equalization of that county, which had approved the action taken by the county assessor in assessing taxpayer's tangible personal property consisting

of farm machinery and livestock in three different taxing districts in that county rather than in the single taxing district in which taxpayer had originally listed all of said property.

Appellant, Svoboda and Hannah, is a farming partnership formed in 1959, consisting of the mother, Anna Svoboda, her two sons, Frank B. Svoboda and Don T. Svoboda, and her son-in-law, James Hannah, the husband of her daughter, Rosanne. In 1964 the partnership owned 1,760 acres of land in school district No. 50 and 320 acres in school district No. 33A. As part of its operation, it also leased land from Liberty Farms, Inc., a family corporation, whose shareholders were the aforesaid Anna Svoboda, her sons, Frank B. Svoboda and Don T. Svoboda, and her daughter, Rosanne Hannah. Of the land leased by the partnership, 1,520 acres were in school district No. 33A and 800 acres were in school district No. 12C. The partnership also owned 2,720 acres of land in school district No. 84 in Perkins County, and also some grazing land in Chase County, not involved in this action. It should also be added that of the 1,760 acres owned by the partnership in school district No. 50, approximately 400 acres were under lease to an employee of the partnership, one Steve Woitalewicz, who farmed the lands leased to him by the partnership in his own name, and not as a part of the partnership operation except as to the rent arising from the lease.

It appears from the evidence that the land owned by the partnership in the western part of Perkins County, including the land located in school district No. 50, was almost exclusively devoted to producing wheat. Of the 1,918 acres planted in 1964, all of the wheat produced came from land lying in school districts Nos. 84 and 50, except for 158 acres in two other sections. It also appears clear from the report of the partnership's accountant, used in the preparation of its income tax return, that the principal source of income of the partnership was realized from the sale of grain. The partnership was also en-

gaged in the raising and wintering of cattle. The majority of the grain storage was located in school district No. 50 with the remainder being stored in school district No. 84. There was a residence and home buildings located on what is referred to as the "home place" in school district No. 50. The bulk of the farm machinery "dollar-wise" was stored on the home place. This was machinery adapted to and used in connection with the production of wheat. Some of the machinery was stored on the separate farm leased by the partnership to Steve Woitalewicz, also in school district No. 50.

The wheat operation referred to was located a short distance west of the town of Grant. Approximately 16 miles to the east of the wheat farm and lying south and east of Grant, the partnership also conducted what was principally a stock farm or cattle raising operation on land both owned and leased by it, located in both school districts Nos. 33A and 12C. The lands in these two districts are contiguous but are separated by a county road which happens to be the boundary line between the two districts. There was a farm residence (unoccupied during the years 1963 and 1964) located upon the property in school district No. 33A, together with other farm buildings, feeding bunks, pens, etc. Likewise there were a barn and feeding facilities located in school district No. 12C, adjacent to the property in school District No. 33A. Most of the partnership's feeding facilities and bunks were on the ranch south of Madrid, and the evidence is uncontroverted that a substantial number of cattle were fed there during the winter months. According to the testimony of the partners, the cattle were generally moved to Chase County for pasturing after March of each year. They also testified that the livestock business of the partnership was principally used to utilize roughages on the farm. The partnership had another employee, one John Kosmicki, who was in charge of the livestock on the ranch and also handled the irrigation wells there. He occasionally did work on the wheat farm

also. He did not live on the farm, however, but lived in the town of Madrid.

The county assessor and another witness for the appellees testified that during their inspection of appellant's operations in April and December of 1963, and also in the early part of 1964, they found all the cattle located on the ranch in both school districts 33A and 12C in varying numbers. They found none of the cattle in school district No. 50, although there was testimony that on occasions cattle were also kept on the wheat farm. Some row crops were also raised on the ranch and the tax schedules filed by the partnership for 1964 list grain production of milo, millet, and wheat. In addition there were approximately 900 acres of grassland in school district No. 33A, and between 90 and 100 acres of irrigated grassland in school district No. 12C. There was no grassland on the west farm. Some of the hay and crops raised on the ranch was sold and the rest was fed to the cattle. There was also machinery stored on the ranch, which was used in connection with the ranch operations.

The partnership operated the wheat farm and the stock farm as a single unit under the government Soil Bank Program. 7 U.S.C.A., § 1801, p. 432, et seq. Under its contract with the government it was assigned certain bases with which it was required to comply in order to be in the government program. Frank B. Svoboda testified that the farm was operated in such a way that the wheat allotment could be moved to the eastern part of the county or western part of the county according to their wishes and that they were also able to move the feed grain base any place on the farm that they saw fit.

With regard to the partners themselves, and their conduct of the partnership business, the evidence discloses the following: Frank B. Svoboda had his residence in Ogallala, Keith County, where he also maintained his office. Don T. Svoboda lived in Lincoln, Lancaster County, but generally came out to the farm around May 20th and stayed until about September 20th. At such

times he stayed in a house in Grant owned by Frank, the sister Rosanne Hannah, and himself. James Hannah was a resident of Los Gatos, California. He came out to the farm about June 15th each year and left about August 25th. At such times he and his family stayed on the home place with his mother-in-law, Anna Svoboda. Anna Svoboda, the mother, lived in California with a sister from September 20th to June 1st of each year. She came out to the farm about June 1st and usually left after the livestock was moved, which was about the 15th or 20th of September. While in Nebraska she made her home at the home place in school district No. 50, which is where the father, Frank Svoboda, lived when he was alive. No one other than the mother, Anna Svoboda, and James Hannah, and his family, ever stayed on the home place, and they only did so for a few months during the summertime. There was testimony, however, that Anna Svoboda filed a personal property tax return in Perkins County and voted there; and also that she had her furniture and personal possessions in school district No. 50. The partners Frank B. Svoboda and Don T. Svoboda testified that they considered the residence in school district No. 50 as the principal place of business of the partnership. There was a telephone listed in the name of the mother in the home place and also another telephone on the property leased by Steve Woitalewicz, but this phone was listed in his name. Svoboda and Hannah did not maintain a listing in the telephone directory in its own name. There was no telephone in the residence on the ranch property. There was evidence that some records of the partnership were stored in the home in school district No. 50. However these appear to have been largely old income tax records turned over to the partners by their accountant after he completed the preparation of their income tax returns about February 15th every year, and also some records with reference to the kind of crops planted. Some business conferences were held in the house, but they were also held in the

fields or anywhere else on the land owned and leased by the partnership. Frank B. Svoboda testified that he conducted quite a bit of the business of the partnership from his office in Ogallala, but that his brother, Don T. Svoboda, who lived in Lincoln, operated the partnership the greater portion of the year. All of the partners were authorized to write checks on the checking account in the First National Bank in Ogallala. There was no partnership checkbook nor did they use printed checks, but only counter checks. Certain bills were submitted to Anna Svoboda in California for payment. Don T. Svoboda paid the electric account from Lincoln. The bank statements were sent to Frank B. Svoboda, who looked them over and then sent them to Don T. Svoboda who eventually turned them over to their accountant in Lincoln for the preparation of the income tax returns. Any mail addressed to Svoboda and Hannah at Grant was sent to Don T. Svoboda in Lincoln.

The partnership filed its personal property tax return for the year 1964 in school district No. 50, listing all the farm machinery, equipment, and livestock in that district for taxation. The county assessor subsequently filed revised separate schedules for the partnership listing such personal property according to its use and location, and dividing it up between school districts Nos. 50, 33A, and 12C. He left the machinery and equipment for the production of wheat in school district No. 50, but split up the row crop machinery and equipment between school districts Nos. 33A and 12C. He also divided the cattle evenly between school district No. 33A and school district No. 12C. The partnership filed objections before the Perkins County board of equalization, which board affirmed the action of the county assessor as reflected by his schedules. Appellant then perfected an appeal to the district court for Perkins County, which affirmed the action of the county board of equalization and dismissed appellant's petition. Appellant's motion for new trial

was overruled and it appealed to this court. We affirm the judgment of the lower court.

It is the contention of appellant that the county board of equalization abused its discretion in taxing the tangible personal property in the three taxing districts, that it operated only one farm, that the principal place of business on said farm was the home place in school district No. 50, and that under the statutes of Nebraska all of the property should have been taxed at that place.

Before discussing the claims of appellant on these points, it is appropriate to notice first the provisions of section 77-1216, R. S. Supp., 1963, as follows: "Questions that may arise as to the proper place to list personal property shall be determined as follows: (1) If between several places in the same county, the place for listing and assessing shall be determined and fixed by the county board; and (2) If between different counties, the place for listing and assessing shall be determined by the Tax Commissioner * * *. When fixed in either case, it shall be as binding as if fixed by specific statutory provision."

Under the foregoing section where questions arise as to the proper place to list personal property, if between several places in the same county, it is the duty of the county board of equalization to fix the place for listing and assessing such property, and its action in that regard will not be disturbed on appeal, unless an abuse of discretion is shown. Diemer & Guilfoil v. Grant County, 76 Neb. 78, 107 N. W. 216; Goebel v. County of Holt, 172 Neb. 81, 108 N. W. 2d 406; Ramm v. County of Holt, 172 Neb. 88, 108 N. W. 2d 808. It is first necessary to determine, therefore, whether the action of the county board of equalization was an abuse of discretion on its part. If it was not, then the above-quoted section effectively disposes of this appeal, and the action of the county board will not be disturbed.

In Goebel v. County of Holt, *supra,* we approved the definition of "discretion" set out in Greenberg v. Fire-

man's Fund Ins. Co., 150 Neb. 695, 35 N. W. 2d 772, as follows: "The word 'discretion' is one of variable meanings depending on its use. In Tingley v. Dobly, supra (13 Neb. 371, 14 N. W. 146), we quoted with approval this definition by Lord Mansfield: 'Discretion when applied to a court of justice means sound discretion guided by law. It must be governed by rule, not by humor; it must not be arbitrary, vague, and fanciful, but legal and regular.' As used in the connection here presented it means that the court in its ruling must be guided and governed by applicable law. It means the application of statutes and legal principles to all the facts of a case." We held in the Goebel case that the above definition applied to actions of the county board of equalization under section 77-1216, R. S. Supp., 1963. Therefore we must necessarily examine the provisions of Chapter 77, R. R. S. 1943, relative to the assessment and taxation of personal property and must determine whether any other statutes are clearly applicable under the facts of this case, or whether, on the contrary, the facts presented valid and legitimate "questions" to the board of equalization as to the proper place of listing the personal property for assessment, and justified it in making its own determination under section 77-1216, R. S. Supp., 1963.

Among the statutes which must be considered in this connection are section 77-1204, R. R. S. 1943, and sections 77-1202 and 77-1205, R. S. Supp., 1963.

Section 77-1202, R. S. Supp., 1963, states the general rule that personal property shall be listed and assessed where the owner resides, except that property having a local situs shall be listed and assessed at that situs.

Section 77-1204, R. R. S. 1943, provides: "When the owner of livestock or other personal property connected with a farm does not reside thereon, the same shall be listed and assessed in the county, township or precinct where the farm is situated. If the farm is situated in several townships or precincts, it shall be listed and assessed in the township or precinct in which the prin-

cipal place of business on such farm shall be."

Section 77-1205, R. S. Supp., 1963, provides: "Livestock in charge of an agister, caretaker, or nonresident owner, on January 1, at 12:01 a.m. of the year for which the property is required to be listed, and not connected with the farm, shall be assessed where so kept; and any livestock which shall be brought into any county of this state for grazing purposes between January 1, at 12:01 a.m. and July 1 of any year shall be assessed by the county assessor or county clerk, where he is ex officio county assessor in such county, and in the proper taxing district unless the owner of said livestock produces a certificate from the county clerk, or other proper officer, showing that such property has been assessed elsewhere."

Examining the above statutes, therefore, we note that the first and primary test for determining tax situs is the residence of the owner. § 77-1202, R. S. Supp., 1963. The owner in this case is Svoboda and Hannah, a partnership. Under both the statutory and case law in this state, a partnership has long been considered as an entity, separate and apart from the individual partners. State v. Pielsticker, 118 Neb. 419, 225 N. W. 51; §§ 67-304 (4) and 67-306 (1), R. R. S. 1943. It is also considered such for tax purposes in Nebraska. § 77-113, R. R. S. 1943; Clay, Robinson & Co. v. Douglas County, 88 Neb. 363, 129 N. W. 548, L. R. A. 1915C 922, Ann. Cas. 1912B 756.

It is a general rule that partnership property is taxable as an entity at the domicile of the firm rather than at the residences of the several owners, and the domicile of a partnership, for the purposes of taxation, is its place of business. 2 Cooley on Taxation (4th Ed.), § 473, p. 1060; Tax Review Board v. Belmont Laboratories Co., 392 Pa. 473, 141 A. 2d 234. Neither the residence of the partners nor their abstract intent is material in determining taxable situs. Walter G. Hougland & Sons v. McCracken County Board of Supervisors, 306 Ky. 234, 206 S. W. 2d 951. See, also, 84 C. J. S., Taxation, § 328, p. 662.

General rules for determining situs of property for taxation are, however, subject to statutory modification. With reference to section 77-1202, R. S. Supp., 1963, we have heretofore held that section 77-1204, R. R. S. 1943, and section 77-1205, R. S. Supp., 1963, establish specific statutory exceptions to the general rule that personal property shall be listed and assessed where the owner resides, and that the residence of the taxpayers is determinative of the place where livestock and other personal property connected with a farm will be taxed only if such property does not come under section 77-1204, R. R. S. 1943, or section 77-1205, R. S. Supp., 1963. Goebel v. County of Holt, *supra*.

In this case the partnership does not claim, nor is there any evidence, that it maintained an office or any place of business anywhere else other than on the home place in school district No. 50, although there is evidence that the partnership business was handled by the individual partners in their respective offices at various places, as previously related. We therefore conclude that section 77-1202, R. S. Supp., 1963, is not applicable to this case, and turn next to a consideration of section 77-1204, R. R. S. 1943, which provides that where the owner of livestock or other personal property connected with a farm does not reside thereon it shall be assessed where the farm is situated, and, if situated in several townships or precincts, it shall be listed and assessed in the township or precinct in which the principal place of business on such farm shall be.

Appellant claims that the provisions of the above statute are applicable and controlling. It is, therefore, first necessary to determine whether the partnership was operating one integrated farm, or multiple operations, consisting of a wheat farm and a ranch.

The term "farm" as used in Chapter 77, R. R. S. 1943, means a tract of land used for cultivation or production of crops of any nature, or the raising of any type of animal embraced within the term "livestock." Goebel

v. County of Holt, *supra;* Ramm v. County of Holt, *supra.* Whether multiple tracts of land, under common ownership or control, are to be considered as a single farm or as separate farms is a question of fact in each case. Many factors are considered by the court in making this determination, but among the elements deemed of importance in this connection are the nature of the operations conducted on such tracts, and also the degree of contiguity or separation of the tracts involved. See, Goebel v. County of Holt, *supra;* Ramm v. County of Holt, *supra;* Delatour v. Smith, 116 Neb. 695, 218 N. W. 731; Diemer & Guilfoil v. Grant County, *supra.* See, also, People ex rel. Tyler v. Scheifley, 252 Ill. 486, 96 N. E. 890.

In the present case, therefore, keeping in mind the distinct and different nature of the operations conducted on the two tracts of land—that is to say, a clearly defined wheat operation on the west farm and a stock raising or ranch operation on the east farm—and keeping in mind further that the two tracts of land are approximately 16 miles apart, and notwithstanding the claim of the partners that they have always operated the tracts as a farming unit and considered it as such, we conclude that the trial court was correct in its finding that the partnership was operating a wheat farm in school district No. 50 and a stock farm in school districts Nos. 33A and 12C. Appellant stresses the fact that it operated its properties as a unit under the government Soil Bank Program, previously referred to. As indicated, this was done under a contract with the government in order to facilitate the shifting of bases and grain production from one part of its properties to another. We do not believe that fact is of controlling importance in this case. Although such a contract may be binding as between the partnership and the United States government, it would not be binding upon or affect the rights of taxing authorities in the determination of the applicable taxing statutes. See Landis Machine Co. v. Omaha

Merchants Transfer Co., 142 Neb. 389, 6 N. W. 2d 380, on rehearing, 142 Neb. 397, 9 N. W. 2d 198.

Did the partnership have a "principal place of business" on the farm in school district No. 50, or for that matter on either farm?

On the basis of the previously related evidence the trial court found that appellant failed to establish that the dwelling house located in school district No. 50 was the principal place of business of the partnership, but found, on the contrary, that the business of the partnership was transacted by each of the partners at their several places of residence. We conclude the trial court was correct and that there is ample evidence in the record to sustain such finding. If the above facts did not make the residence on the home place in school district No. 50 the principal place of business for the partnership, then it had no principal place of business. No claim is made that the vacant house on the ranch southeast of Grant was a place of business of the partnership.

Returning now to a consideration of section 77-1204, R. R. S. 1943, since we have concluded that the partnership was operating a separate wheat farm in school district No. 50, and a ranch or stock farm in school districts Nos. 33A and 12C, we have concluded that the county board in effect complied with that section so far as the wheat farm is concerned, as it assessed all the personal property connected with that farm in school district No. 50 where the farm was situated. With respect to the ranch located in both school districts Nos. 33A and 12C, this section would not be applicable because there was no principal place of business on the ranch. Faced with this situation, the county board listed and assessed the livestock and other property connected with the ranch on the ranch, as it had a right to do under section 77-1216, R. S. Supp., 1963. The assessor in his schedules had divided the row crop machinery and equipment between school districts Nos. 33A and 12C because he found it was customarily located and used in both districts. He

also split the cattle evenly between the two school districts comprising the ranch because he, and another, had seen approximately 650 cattle on both portions of the ranch at various times. Mathematical exactness in the division of the numbers between the districts was neither possible nor necessary, as the number of cattle in each of those districts varied from time to time.

It is apparent that real, valid, and substantial problems faced the county board of equalization in the determination of where to list the partnership property, and we cannot say as a matter of law that in affirming the action of the assessor it was guilty of an abuse of discretion.

We comment in passing upon section 77-1205, R. S. Supp., 1963, which provides so far as material herein, that livestock in charge of an agister, caretaker, or non-resident owner, on January 1, at 12:01 a.m. of the year for which the property is required to be listed, and not connected with the farm, shall be assessed where so kept. This section is by its terms applicable only to livestock which is not connected with the farm and does not apply to farm machinery or other property. We conclude that this section is not applicable to the facts of the present case, as here the cattle were connected with the ranch referred to; but even if it were otherwise, the statute requires the livestock to be assessed where kept. This the county board did to the best of its ability under the discretion afforded it under section 77-1216, R. S. Supp., 1963.

Finally, the taxpayer complains of the fact that the transcript fails to show that a copy of the proceedings of the county board of equalization in this matter was sent to the Tax Commissioner as required by section 77-1502, R. S. Supp., 1963. We deem this assignment to be without merit.

For the reasons stated, we conclude that the judgment entered by the trial court was in all respects correct and should be affirmed.

AFFIRMED.