H. E. LARSON v. STATE OF NEBRASKA.

FILED FEBRUARY 16, 1922. No. 22199.

1. **Embezzlement: NAME: VARIANCE.** In a prosecution upon a charge of embezzlement from a corporation, the fact that the name by which the corporation is designated in the information differs from the one assigned to it in its articles of incorporation is immaterial, if the corporation is the same and the corporate name set out in the information is the one under which it does business and by which it was known at the time of the alleged embezzlement.

2. ———: SUFFICIENCY OF EVIDENCE. The evidence in the record, held to be sufficient to sustain the verdict.

ERROR to the district court for Dixon county: GUY T. GRAVES, JUDGE. Affirmed.

J. J. McCarthy and P. F. Verzani, for plaintiff in error.

Clarence A. Davis, Attorney General, Charles S. Reed and C. A. Kingsbury, contra.

Heard before MORRISSEY, C.J., FLANSBURG and ALDRICH, JJ., HOSTETLER and MORNING, District Judges.

MORNING, District Judge.

The defendant was convicted of the crime of embezzlement in the district court for Dixon county and was

Larson v. State.

sentenced to a term in the state penitentiary, and prosecutes error to this court.

The count of the information upon which the conviction was had charged that on the 21st day of June, 1919, in Dixon county, the defendant then and there being the agent of the Farmers Union Elevator Company, a corporation of Dixon county, Nebraska, did then and there, while acting as such agent and by virtue of such employment as agent of said Farmers Union Elevator Company, receive and take into his possession certain money and one certain bank check dated June 21, 1919, of the amount and value of $582.93, the property and money of the said Farmers Union Elevator Company and did then and there unlawfully, fraudulently and feloniously convert to his own use and did embezzle said property and money, without the assent of said Farmers Union Elevator Company, his principal and employer. At the close of the evidence for the prosecution defendant moved the court to instruct the jury to return a verdict of not guilty, which was overruled and this ruling is assigned as error. An examination of the record convinces us that the court did not err in overruling said motion. There was sufficient evidence introduced by the state to justify the submission of the question of defendant's guilt to the jury.

The chief contention of plaintiff in error is that the verdict is not sustained by the evidence. It is insisted that under the rule announced in *McAleer v. State,* 46 Neb. 116, it was necessary for the state to establish the corporate character of the Farmers Union Elevator Company, named in the information as the employer of the accused and as owner of the check and money alleged to have been embezzled, and that there was a want of evidence to show such corporate character. Formal proof of the incorporation of the Farmers Union Elevator Company was not made, but this was not necessary. The contract by which the defendant was employed was in writing, signed by defendant, and it

designates the employer as "The Farmers Union Elevator Co., a corporation of Dixon, Nebraska, party of the first part." This was placed in evidence, and it is not only an admission by the defendant that his employer was a corporation, but it was evidence that said employer was assuming to act as a corporation. The evidence shows that said company had 84 stockholders, a board of directors, a president, secretary and treasurer, and that meetings of the stockholders and directors were held and that it did business in the name of the Farmers Union Elevator Company. In *Braithwaite v. State*, 28 Neb. 832, the court cited with approval *Burke v. State*, 34 Ohio St. 79, wherein an instruction by the court to the effect that it was "sufficient to prove by reputation that there was, at the time when the crime is alleged to have been committed, a corporation known by that name," was approved. In the present case the defendant himself recognized, in the contract of employment signed by him, that his employer was in fact a corporation, and that it was doing business under the name by which it was designated in the information.

On cross-examination of J. J. Stanley, president of the Farmers Union Elevator Company, counsel for defense exhibited what purported to be the constitution and by-laws of the corporation, and developed the following testimony relative thereto: "Q. I will ask you to examine this little book, marked defendants exhibit 1, and state if it be the constitution and by-laws of the company concerning which you have been testifying and by which the defendant was employed? A. Yes, sir; I think it is. Q. As president you have seen such copies as these around the office? A. Yes, sir. Q. And this, you think, contains the constitution and by-laws of the association? A. Yes, sir." Defendant's counsel then offered and read in evidence article 1 of the document, as follows: "The name of this corporation shall be the Dixon Farmers Union Elevator Cooperative Association."

Defendant's counsel insists, in substance, that this

evidence shows that the corporation by which defendant was employed was the Dixon Farmers Union Elevator Cooperative Association, and not the Farmers Union Elevator Company, as alleged in the information, and that there is a fatal variance between the allegation of the information and the proof as to the name of the corporation, and that it also shows that there was no such corporation in Dixon county, by which defendant was employed, as that named in the information. Granting that the evidence referred to shows that the legal name of the corporation was the "Dixon Farmers Union Elevator Cooperative Association," does it prove anything other than that the corporation was, at the time, doing business under an assumed name somewhat shorter and slightly different from the one under which it was incorporated? If the evidence had shown that the corporation was doing business under the name of Dixon Farmers Union Elevator Cooperative Association, instead of the name set out in the information, no doubt the variance between the allegation of the information and the proof would have been fatal, but such was not the case. The evidence shows, without contradiction, that the name set out in the information was not only the one used in the written contract by which defendant was employed, but was also the name by which all of its business was transacted while defendant was employed by it. The above-quoted evidence of the president of the corporation shows that the two names refer to the same corporation, and it removes any possible doubt that the concern was a corporation. How it came about that the name under which it did business was different from the one mentioned in the above-quoted provision of the constitution and by-laws the record does not disclose, nor do we regard it as material. If the injured party is known as well by one name as another, he may be designated in an information by either. 14 R. C. L. 182, sec. 28; 22 Cyc. 348, 350; *State v. Glaze,* 9 Ala. 283; *Commonwealth v.*

*Trainor,* 123 Mass. 414; *State v. Davis,* 109 N. Car. 780; *Bell v. State,* 25 Tex. 574. And, since a corporation, as well as an individual, may have, or be known by, more than one name, we see no reason why the same rule should not apply where the injured party is alleged to be a corporation. 1 Clark & Marshall, Corporations (11th ed.) secs. 51, 52.

Defendant also insists that the evidence was not sufficient to prove that the check described in the count of the information upon which he was convicted was the property of the Farmers Union Elevator Company. John Curley went to the elevator of said corporation at Dixon, where defendant was in sole charge, and bought a quantity of corn, giving his check in the sum of $1,056.48 payable to the order of the Farmers Union Elevator Company in payment. Defendant had charge of the checking account of said corporation at Dixon, and his usual custom was to deposit moneys received by him for his employer in its bank account, which was in the name of the corporation. That course was not pursued, however, with the check for $1,056.48 above mentioned. He traded said check to one Roe for two other checks, one for $473.55 payable to the order of Farmers Union Elevator Company, which he deposited to the credit of said company, and one for $582.93 payable to his own order, which he deposited to his own credit and which was duly honored, and defendant received and re-tained the proceeds of it, and failed in any manner to account therefor to his employer. This last-mentioned check is the one described in the count of the information upon which he was convicted. Defendant was a witness in his own behalf. He claims that, while in charge of the elevator of said company at Dixon, at a salary of $125 a month, he purchased with his own funds certain corn from a man named Johnson; that he placed said corn in one of the bins in the company's elevator, and that said corn was a part of the corn sold to John Curley, and that $582.93 of the amount included in the check of

John Curley for $1,056.48 represented that porti n of
the corn which belonged to him. He explains the method
of handling the large check thus: "Q. What did you
do with exhibit 1 after it came into your possession
after it was delivered to you by Mr. Curley? A. I
traded it off for two checks. Q. You traded it? A.
Yes, sir. Q. Who did you trade it to? A. George E.
Roe, manager of Farmers Elevator at Carroll.. * * *
Q. And where did you and G. Elam Roe make the trade?
A. At Dixon, Nebraska. Q. And you traded exhibit
1 (the check for $1.056.48) for exhibits 4 ($582.93)
and 5 ($473.55)? A. I traded number 1 for 4 and 5.
* * * Q. Instead of trading that check for two
more checks, why didn't you deposit that money in the
Dixon State Bank as you formerly had done? A. That
check didn't belong to the Farmers Elevator, the full
amount. Q. Why didn't you go to the bank and de-
posit it and have $582.93 credited to your account and
$473.55 credited to the elevator account? * * * A.
I don't know why I didn't. Q. Is that the only answer
you can give? A. Yes, sir. Q. After receiving those
checks, exhibits 4 and 5, what did you do with them?
A. Deposited them in the Dixon State Bank. Q. $582.93
to your private account? A. Yes, sir. Q. And $473.55
to the elevator account? A. Yes, sir." Defendant
further testified that Roe came to Dixon to make the
trade of said checks with him; that defendant sent for
him, and he came for that express purpose, and that he
held the large check until Roe came. He was unable to
give any very satisfactory information concerning the
man from whom he purchased the corn which he claimed
was his, except that his name was Johnson and that he
seemed to be a farmer. Johnson was not called by him
as a witness, defendant claiming that he had made in-
quiry, but could not find him. He claims to have paid
Johnson over $600 for the corn, such payment being
made in cash. The whole story told by defendant, in ex-
planation of his theory that the check for $582.93 did not

belong to his employer, but was his own private property, was not calculated to convince a jury of its truth, and the jury were amply justified in not believing it. There is ample testimony in the record to support the contention of the state that the check for $582.93 was the property of the Farmers Union Elevator Company, and the verdict of the jury that defendant is guilty of embezzling it is well sustained by the evidence.

The record is free from error, and the judgment is

AFFIRMED.