JACK B. LEWIS, APPELLEE, v. ELBERT M. GALLEMORE, SR., APPELLANT, IMPLEADED WITH ELBERT M. GALLEMORE, JR., APPELLEE.

113 N. W. 2d 54

Filed January 26, 1962. No. 35080.

Kenneth H. Dryden, for appellant.

Dier, Barton & Barton and Charles H. Beatty, for appellee Lewis.

Heard before CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BOSLAUGH, J.

This is an appeal in an action in equity in which Jack B. Lewis, the appellee, was the plaintiff and Elbert M. Gallemore, Sr., the appellant, was the defendant. Elbert M. Gallemore, Jr., was joined as a defendant in the lower court but did not participate in the trial and has made no appearance in this court. For convenience, Elbert M. Gallemore, Sr., will be referred to as the defendant and Elbert M. Gallemore, Jr., will be referred to as Bert Gallemore, Jr.

The plaintiff's second amended petition alleged in part that the plaintiff, Bert Gallemore, Jr., Don Main, and the defendant associated together on November 16, 1956, for the purpose of developing and operating a radio station at Kearney, Nebraska, to be known as KRNY, and that as a part of their agreement the parties entered into the following written memorandum:

"Kearney, Nebraska
November 16, 1956

"TO WHOM IT MAY CONCERN:

"Prior to this date, Elbert M. Gallemore Sr., of Kearney, Nebraska, applied for and received from FCC a construction permit for a 5,000 watt, daytime radio station to operate on 1460 kc., at Kearney, Nebraska. Hereafter, said radio station will be referred to as KRNY.

"We, the undersigned, being able and competent in mind and body, now agree that within reasonable time after license to broadcast for KRNY has been received, Elbert M. Gallemore Sr., will apply for authorization from FCC to amend KRNY ownership. Upon receipt of said authorization, we will file articles of incorporation pertaining to KRNY with the secretary of state, state of Nebraska.

"We, the undersigned, agree that upon grant of corporation charter, Elbert M. Gallemore Sr., will hold

30% of the corporation stock, and serve KRNY as General Manager. Elbert M. Gallemore Jr., will hold 25% of the corporation stock, and serve KRNY as Assistant-General Manager and Chief Engineer. Jack B. Lewis will hold 25% of the corporation stock, and serve KRNY as Station Manager. Don Main will hold 20% of the corporation stock, and serve KRNY as Program Director.

"Elbert M. Gallemore Sr., has already spent in excess of $8,000.00 in initial investment for KRNY. We, the undersigned, agree that within reasonable time after license to broadcast has been received, we shall make initial capital investments as follows: Elbert M. Gallemore Jr., $2,000.00 (minimum). Jack B. Lewis, $4,000.00. Don Main, $4,000.00.

> "/s/ Elbert M. Gallemore
> ELBERT M. GALLEMORE SR.
> "/s/ Elbert M. Gallemore Jr.
> ELBERT M. GALLEMORE JR.
> "/s/ Jack B. Lewis
> JACK B. LEWIS
> "/s/ Don Main
> DON MAIN"

The petition further alleged that the agreement between the parties provided for the organization of a corporation and for the plaintiff to receive 25 percent of the capital stock; that pursuant to the agreement between the parties, the plaintiff contributed $4,000 as capital; that the radio station was developed and has been operating since that date; that the defendant has purchased from Don Main his interest in the radio station; and that the defendant has refused to join in the organization of a corporation and, in effect, now claims to be the sole owner of the radio station. The plaintiff prayed that the court find that the plaintiff owned a 25 percent interest in the station property which was held by the defendant as trustee for the plaintiff; that the association between the parties be dissolved and the assets partitioned; that an accounting be had and

a receiver appointed; and that the defendant be enjoined from disposing of the property.

The defendant's answer was a general denial.

The district court, upon its own motion, directed the parties to proceed to trial upon the issue as to whether the plaintiff owned any interest in the radio station, and reserved all other issues for determination at a later date. There was no objection by either party to this procedure. After a hearing upon the issue as to the ownership of the plaintiff, the court found that the plaintiff owned a 25 percent interest in a joint venture which owned and operated the radio station, and found that a receiver should be appointed to take charge of the property pending a determination of the other matters involved in the litigation. The defendant's motion for new trial was overruled and he has appealed.

The assignments of error are, in effect, that the finding and judgment of the district court upon the only issue tried are not supported by the evidence. Thus, the question upon this appeal is whether the evidence shows that the plaintiff owned an interest in the radio station.

This being an appeal in an action in equity, it is the duty of the court to try the issues of fact complained of de novo and reach an independent conclusion without reference to the findings of the district court. Toelle v. Preuss, 172 Neb. 239, 109 N. W. 2d 293. However, in determining the weight of the evidence which is in irreconcilable conflict on a material issue, the court will consider the fact that the trial court observed the witnesses and their manner of testifying. Smith v. Wade, 169 Neb. 710, 100 N. W. 2d 770.

The evidence shows that the defendant is engaged in the construction business. The plaintiff, Bert Gallemore, Jr., and Don Main have all had experience in the radio and television industry.

Early in 1956 the plaintiff talked with the defendant, Bert Gallemore, Jr., and Don Main about starting a

new radio station in Kearney, Nebraska. On May 11, 1956, an application for the radio station was filed in the name of the defendant. On October 24, 1956, the Federal Communications Commission authorized the construction of the station. On November 16, 1956, the parties entered into the written memorandum set out above.

The technical work of assembling the transmitter and other equipment, setting it up, and doing the necessary wiring so that the station would be ready to operate was done by the plaintiff and Bert Gallemore, Jr. The station began to operate in December 1956. The plaintiff acted as station manager. Bert Gallemore, Jr., was the station engineer. Don Main was the program director. The defendant was the general manager of the station.

The plaintiff testified that early in 1956 the parties agreed that the plaintiff and Bert Gallemore, Jr., would each own 25 percent of the station, Don Main 20 percent, and the defendant 30 percent; that the plaintiff and Bert Gallemore, Jr., were each to receive a credit of $1,000 for their work in preparing the application filed with the Federal Communications Commission and their work in getting the station on the air; that the plaintiff was to contribute $3,000 in cash which would make his total investment $4,000; and that Bert Gallemore, Jr., was to contribute $2,000 in cash and Don Main $4,000. The plaintiff further testified that he paid $3,000 to the defendant as his contribution of capital; that the money was obtained through a loan from his uncle, Sam Wild; that the loan was evidenced by two notes signed by the plaintiff and the defendant; and that the defendant was required to sign the note because the title to the station was held in the name of the defendant.

The testimony of Don Main substantially corroborated that of the plaintiff. Main also testified that he paid the defendant $1,700 in cash and worked at the station for 6 months without salary as his contribution of capi-

tal. Main further testified that he later sold his interest in the station to the defendant for $5,000; that the defendant executed and delivered his promissory note in the amount of $5,000 payable to Main; that the defendant has paid $2,300 upon the note; and that he and the defendant executed the following memorandum agreement:

## "AGREEMENT

"This agreement, made and entered into by and between Don Main, hereafter known as 'Seller', and E. M. Gallemore, hereafter known as 'Buyer.'

"WITNESSETH, that the Seller is the owner of an individual interest in the business known as KRNY Radio, of Kearney, Nebraska, and is desirous of selling such capital interest representing his money and services previously contributed, and the Buyer is desirous of buying such interest in full, for the accomplishment of such sale the following terms are agreed to:

"1. Seller agrees to, and does by these presents, convey to the Buyer all his right, title, and interest in and to KRNY Radio, effective November 4, 1957.

"2. Buyer agrees to execute and deliver to Seller a promissory note, of even date, in the principal sum of $5,000.00 payable at the rate of $200.00 per month, at Sutherland, Nebraska, or as directed in writing by Seller, together with interest on any unpaid principal, payable annually, according to the terms of the note of this date.

"3. Buyer further agrees to assume any and all shares of obligation due from KRNY Radio to any creditors, and to save the Seller harmless from any liability from any creditors, past, present, and future, and agrees the obligation to pay the note is personal to the Buyer.

"Dated this 4th day of November, 1957
                        "/s/ Don Main
                        "/s/ E M Gallemore"

"/s/ Rose E. Ross
    WITNESS

At about the time Main sold his interest in the station to the defendant, a notice was published in a local newspaper to the effect that Main had terminated "his association and all interest" in the station and "from any and all liabilities, activities, responsibilities therefrom." On or about January 23, 1958, the plaintiff signed a letter addressed to the defendant which stated:

"For the record, this is to advise that as of this date, I have no interest in Radio Station KRNY, other than as an employee.

"I have been advised that when this station is incorporated, with Federal Communication Commission approval, I will be given the opportunity to purchase a part of the stock, if I so desire."

The plaintiff testified that the letter had been prepared by the defendant; that the defendant stated that the Federal Communications Commission had inquired about the ownership of the plaintiff in the station; that the application for the station had been made in the name of the defendant "as a service to us all"; and that the defendant wanted the plaintiff to sign the letter in order to protect the investment in the station.

The defendant testified that he was the owner of the radio station; that the plaintiff was an employee; that at the time the agreement was signed on November 16, 1956, it was understood that there was to be no partnership but that if the money was supplied he would, subject to Federal Communications Commission approval, sell the radio station to the corporation; that the $3,000 received from Sam Wild was a loan to the defendant and not a contribution of capital by the plaintiff; and that the plaintiff had requested the defendant to pay the notes to Sam Wild.

The annual financial reports filed with the Federal Communications Commission for 1957 and 1958 listed the defendant as the owner of the station.

It is a general rule that the practical interpretation given to a contract by the parties to it, while they are

engaged in its performance and before any controversy has arisen concerning it, is one of the best indications of the true intent of the contract, and such a construction will ordinarily be enforced by the courts. Podewitz v. Gering Nat. Bank, 171 Neb. 380, 106 N. W. 2d 497. We believe that this rule is applicable in this case.

When the defendant voluntarily entered into the agreement with Don Main to purchase his "interest in the business known as KRNY Radio" and assumed the seller's share of any "obligation due from KRNY Radio to any creditors," he acknowledged that the agreement dated November 16, 1956, contemplated that the other parties to it were to have an interest in the radio station property. This is the only issue that was tried in the district court. After considering the evidence de novo we make the same finding that was made by the district court.

The argument of the defendant is directed largely to the question of whether a partnership or joint adventure existed between the parties. The defendant contends that there was no partnership or joint adventure here because there was no express agreement for sharing profits and losses, for common property and accounts, and for mutual agency.

The agreement dated November 16, 1956, contemplated the organization of a corporation within a "reasonable time after license to broadcast has been received." The agreement contained express provisions as to the amount of capital to be contributed by each party and the amount of stock to be issued to each party. Thus, the parties contemplated the sharing of profits and losses, the ownership of a common property, and some control over the management of the business by each of them.

The existence and scope of a partnership may be evidenced by written or oral agreement, or implied by the conduct of the parties and what was done by them. Hauke v. Frey, 167 Neb. 398, 93 N. W. 2d 183. The

acts of the parties in this case, and what was done by them, indicated a joint adventure which was to continue until a corporation was organized to take its place.

The judgment of the district court is correct and it is affirmed.

AFFIRMED.

SIMMONS, C. J., participating on briefs.