STATE OF NEBRASKA, APPELLEE, V. GEORGE J. SIERS, APPELLANT.

248 N. W. 2d 1

Filed November 17, 1976.   No. 40480.

William K. Schaphorst and Robert J. Becker of Swarr, May, Smith & Andersen, for appellant.

Paul L. Douglas, Attorney General, and Jerold V. Fennell, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

SPENCER, J.

Defendant, George J. Siers, appeals from a judgment entered upon a verdict of the jury finding him guilty of embezzlement. A sentence of not less than 1 nor more than 3 years in the Nebraska Penal and Correctional Complex was imposed. Defendant lists nine assignments of error which will be enumerated as they are discussed. We affirm.

The information under which Siers was charged and tried alleges, so far as material herein, that between the dates of August 3, 1974, and April 7, 1975, inclusive, "George J. Siers * * *, being then and there the agent of Pathfinder II Ltd, a limited partnership, * * * did then and there by virtue of such position * * * as agent of said Pathfinder II Ltd, a limited partnership, receive and take into his possession certain money * * * all of which money was and is the property of * * * his principal, and did then and there fraudulently and unlawfully convert to his own use and embezzle said money, without the consent of said Pathfinder II Ltd., a limited partnership, his principal, * * *."

The salient facts of this case, so far as material to this appeal, are that Siers and Enlowe A. Hevner, both hav-

ing had experience as commodity brokers, in 1973 formed a general partnership, Pathfinder II, to trade in commodities and commodity futures. The bookkeeping and accounting was done primarily by Siers, although Hevner also had complete authority and access to the books. Both Siers and Hevner traded through the Pathfinder II account. Sometime later, they conceived the idea of operating limited partnerships in connection with their business for the purpose of trading in commodities, the apparent advantages being the limited liability of limited partners and greater flexibility in operation. With that in mind, in February 1974, Siers set up a small limited partnership with five investors, under the name of Prospector II. All the trading for that and another limited partnership was done through an account opened in the name of one of its investors, Rick Murphy, who was Siers' brother-in-law. Although probably illegal according to the evidence adduced at the trial, Siers did trade through Rick Murphy's account and explained the advantages of so doing on the basis of a reduction in paper work, and in margin requirements. Siers conceded that the effect of this procedure was that Murphy would legally have title to all the assets, including profits from trading, and was also liable for losses sustained by the account. Investors in the limited partnerships were not able to determine if they had made or lost money on the orders Siers placed for them, as the account statements all went to Murphy, and in effect, to Siers, who shared the Murphy account mailing address.

Plans for the formation of Pathfinder II, Ltd., grew out of discussions between Hevner and a Mr. Donald M. Vervaecke. Both Hevner and Vervaecke testified that Hevner was to be the trading agent and that the general partner of the limited partnership had not been determined. Hevner never considered himself a limited partner. Both Hevner and Vervaecke testified that it was their understanding and agreement that before Pathfinder II, Ltd., was to come into existence and commence

trading operations, it was necessary to obtain 10 limited partners, each of whom would invest $2,500. Hevner was to assist Vervaecke in finding investors to round out the total of the 10 limited partners, but, according to his testimony was unsuccessful. Siers, on the other hand, testified that when he and Vervaecke discussed the limited partnership, the agreement was that 10 limited partners was the *maximum* number that could participate, but that Pathfinder II, Ltd., could function with fewer limited partners. He also stated that he was to be the trading agent for the limited partnership.

The evidence indicates that Vervaecke sold seven $2,500 shares in Pathfinder II, Ltd., to prospective investors, and turned the money totalling $17,500, over to Siers. This money was in the form of checks drawn by the prospective limited partners, which, according to evidence in the record, at the suggestion of Siers were made payable to Pathfinder II. The payment for the shares took place between August 2 to August 8, 1974, and the money was deposited in the Pathfinder II account. Vervaecke and Hevner both testified that Siers told them the money would be held in an escrow account until the limited partnership was formed. Siers denied this, saying that the discussion with reference to an escrow account was in connection with another venture, Pathfinder Commodities Fund.

A great amount of conflicting testimony about the creation or existence of the Pathfinder II, Ltd., entity was adduced at the trial. Vervaecke believed that 10 investors were required and that trading could not begin without notice to the investors. Michael McCormack, who was one of the Pathfinder II, Ltd., investors, and the individual who filed the embezzlement complaint against Siers, testified to the same effect. Siers denied the 10 investor requirement, but further testified that he had found two investors on or about August 10, 1974, *who, in addition to himself, constituted the 10 investors,* and at that point he was entitled to

commence trading without notice to any of the investors. He produced as his defense witnesses two individuals who testified that they had invested in the venture.

During the trial exhibit 4, a purported limited partnership agreement of Pathfinder II, Ltd., containing signatures of six of the partners, was offered and received in evidence. Neither Mrs. Vervaecke, who was to be a partner, nor Michael McCormack signed the partnership agreement. The agreement was on a form prepared and used by Siers for forming his limited partnerships, and contained blanks which needed only to be filled in with pertinent data. There is evidence in the record that at the time the signatures were affixed to the form, it was a blank form. The name of the limited partnership and the date, now appearing on the form, were added later. The agreement itself, exhibit 4, does not require that 10 limited partners join in the venture; and it gives the general partner, designated as Pathfinder II, the power to "act unilaterally as his best judgment deems."

The record reveals that Vervaecke became alarmed when Buckmaster, one of the limited partners, mentioned that he had received a statement showing a profit for Pathfinder II, Ltd., for the month of September. McCormack also received statements showing small profits. Vervaecke did not receive any such statements. Vervaecke met with Hevner and Siers and inquired how the entity could turn a profit if it was unable to trade. He testified that Siers replied he had not traded and that the statements were just to hold the limited partners' interest. Hevner's testimony corroborated this. Siers denied this. He stated he had admitted trading in the Rick Murphy account, but had assured Hevner and Vervaecke that he would not do so again.

The State suggests and argues that the following occurred with regard to the $17,500 invested by the Vervaecke group. As previously stated, the money was

paid to Siers in early August 1974, by check or checks payable to Pathfinder II, not Pathfinder II, Ltd. The funds were placed in the Pathfinder II bank account, but, according to Hevner, later disappeared. It was the State's theory that Siers, by means of checks whose numbers were out of sequence with the current business transactions, removed the limited partners' money from the Pathfinder II bank account and placed it in the Rick Murphy trading account. The State adduced evidence that two checks, numbers 1292 and 1297, written on September 10 and 20 respectively, were never entered in the check register of Pathfinder II, exhibit 3. The evidence establishes that Pathfinder II in its business transactions used checks in numerical order, and the checks listed on the check register for the period September 10 to 20 are in numerical order. Siers testified the $13,000 check, No. 1292, was actually his money, and he withdrew the money about that time because of a serious injury to his partner Hevner in an automobile accident the day before, in order to avoid having the money tied up in the estate should Hevner die. By September 1, all but $713.50, or over $39,000, had been transferred by Siers from the Pathfinder II account into the Rick Murphy account. Hevner testified the Pathfinder II money was not to be transferred, but on the same day that he, Hevner, deposited $20,000 in that account, $14,000 was transferred by Siers to the Rick Murphy account. Siers admitted he put the Vervaecke group funds into the Rick Murphy account.

Siers testified the money in question was lost on 10 live cattle contracts purchased on August 16, 1974, by Hevner and Siers. Hevner contends the order was first placed in his account, the Hevner and Hevner account. The records of that account show several transactions in multiples of one or two cattle contracts. Hevner said at the end of the day Siers transferred the cattle contracts to the Rick Murphy account. He also testified that at the time of the purchase, he did not know

where Siers got the margin money for his 5 of the 10 contracts. He felt it "probably was" Siers' money, although he suspected it was not and he felt that the money transferred into the Rick Murphy account was probably not Murphy's. He denied knowing that part of it was the Vervaecke group's money. Siers contradicted part of Hevner's testimony, stating that Hevner himself had placed the order for the cattle contracts in Rick Murphy's account.

On April 16, 1975, following several abortive attempts to retrieve the $17,500, Vervaecke and McCormack attended, uninvited, a meeting in Fremont called by Siers for the Pathfinder Commodities Fund investors. Vervaecke testified that when confronted Siers had said that he had "converted" the Pathfinder II, Ltd., funds and lost all the money. McCormack testified at that time Siers admitted losing their money in the Rick Murphy account and attempting to "chase" it with the Pathfinder Commodities Fund money, which was also lost. Siers denied using any language about "conversion," but testified that the Pathfinder Commodities Fund, more accurately Pathfinder Trading Co. money, was "loaned" to Pathfinder II. Hevner, however, testified that he did not know of this loan.

Defendant's first assignment of error is as follows: "The District Court erred in failing to give instructions requested by the defendant permitting the jury to decide whether a debtor-creditor relationship had arisen and whether defendant as general partner could be convicted of embezzlement from his own partnership."

Siers submitted four instructions, one of which was given. That instruction directed the jury to return a verdict for Siers if it found he had authority and discretion to make trades for Pathfinder II, Ltd. The other instructions as submitted were properly refused.

Defendant urges a general principle of law, that where two persons create a relationship of debtor and creditor a failure of one of the parties to pay over money

does not constitute the crime of embezzlement. The record is absolutely void of any evidence which would support defendant's assertion that the investments by the individuals in Pathfinder II, Ltd., created a debtor-creditor relationship. To render a failure to give an instruction prejudicially erroneous, it is not sufficient that correct abstract propositions of law are thereby embodied. In addition, such propositions must be applicable to the facts. See Bell v. State (1954), 159 Neb. 474, 67 N. W. 2d 762.

Error may not be predicated on the refusal to give an instruction which either erroneously or only partially covers the applicable law. State v. Reeder (1968), 183 Neb. 425, 160 N. W. 2d 753.

With reference to the contention that a partner may not be adjudged guilty of embezzling partnership property, Siers is relying on State v. Quinn (1954), 245 Iowa 846, 64 N. W. 2d 323. That case, however, is distinguishable upon the grounds that Iowa apparently does not follow the entity theory of partnership.

Under both statutory and case law in Nebraska, a partnership has long been considered as an entity separate and apart from the individual partners. Svoboda & Hannah v. Board of Equalization (1966), 180 Neb. 215, 142 N. W. 2d 328. The Uniform Partnership Act adopted in Nebraska clearly mandates the entity theory of partnership. See §§ 67-304(4) and 67-306(1), R. R. S. 1943. See, also, Morse v. Mayberry (1968), 183 Neb. 89, 157 N. W. 2d 881.

Additionally, section 28-538, R. R. S. 1943, in defining the class of property subject to embezzlement, includes property "* * * which is partly the property of any other persons * * * and partly the property of such officer, attorney at law, agent * * *." We hold that in Nebraska, both by statutory interpretation and by our adoption of the legal entity theory of partnerships, a partner may be prosecuted for the embezzlement of partnership property.

The jury was properly instructed, and the record supported its finding that the defendant did not have the authority and discretion to make trades for Pathfinder II, Ltd. His actions in trading the funds of Pathfinder II, Ltd., in the Rick Murphy account were acts of embezzlement. Section 28-538, R. R. S. 1943, provides that embezzlement occurs when an agent uses for his own personal benefit funds which "shall have come into his or her possession or care in any manner whatsoever, * * *."

Defendant's second assignment of error is as follows: "The Court erred in giving its instruction No. 12 containing the civil responsibility of a partner to his co-partners."

Defendant concedes instruction No. 12 is a proper instruction on the law in regard to fiduciary duties of partners, but that it is prejudicially erroneous to use it in a criminal action. Siers does not seriously dispute the factual allegations of the State. His defense is predicated upon the fact he had no intent to embezzle the funds of the investors in Pathfinder II, Ltd. Intent was one of the essential issues before the jury. The instruction was proper for that purpose.

If the defendant desired a more specific instruction, he should have tendered one. Where an instruction is technically correct, and is couched in terms which in the opinion of a party are liable to be misunderstood or misapplied by the jury, it is the party's duty to call the court's attention to the supposed defect and present a suitable instruction.

Defendant's third assignment of error is: "The Court erred in requiring answers over objections to questions by the prosecutor concerning subsequent activity of defendant not related to the alleged embezzlement with which he was charged. The matters included an audit of Pathfinder Trading Company, a Nebraska corporation, and purchases of shares of stock by shareholders in Pathfinder Trading Company."

Much of the testimony, relating to the Pathfinder Trading Company came into the record without objection until Siers was questioned, under cross-examination, about the whereabouts of assets held by Pathfinder Trading Company. In any event, the record clearly indicates that the evidence was relevant on the issue of intent. The defendant made no objection to the introduction of exhibit 9 which was a prospectus for Pathfinder Trading Company. Later, in his own direct testimony, defendant sought to explain the existence of exhibit 9 and its importance in his defense. When the prosecutor attempted to learn what became of money held in escrow for Pathfinder Commodities Fund, the defendant then raised his objection that such testimony would be irrelevant.

Evidence of other crimes, similar to that charged, is relevant and admissible when it tends to prove a particular criminal intent which is necessary to constitute the crime charged or where there is some legal connection between the two upon which it can be said that one tends to establish the other or some essential fact in issue. State v. Young (1973), 190 Neb. 325, 208 N. W. 2d 267.

The fourth and fifth assignments of error concern the question of the existence of Pathfinder II, Ltd., a limited partnership, the alleged victim of the embezzlement. We agree with the State that defendant presented a defense which was based upon the accepted existence of Pathfinder II, Ltd., and sought to prove that he was the general and the trading partner of the limited partnership and in such position could not embezzle the funds of Pathfinder II, Ltd.

The State correctly identified the victim of the embezzlement as Pathfinder II, Ltd. It presented substantial evidence that there had in fact been a partnership formed which the defendant himself titled as Pathfinder II, Ltd., and that the defendant for his own personal use and benefit embezzled the funds of that part-

nership. It might well be argued that the promoters of Pathfinder II, Ltd., did not strictly comply with the provisions of section 67-202, R. R. S. 1943, which specify certain requirements for the formation of a limited partnership. However, subsection (2) of said section provides: "A limited partnership is formed if there has been substantial compliance in good faith with the requirements of subsection (1) of this section."

Siers testified he was to be the trading agent for the limited partnership. There is no question the money collected, totalling $17,500, was turned over to him, and he admits transferring it to the Rick Murphy account. The State's evidence is that Siers was to hold the money in an escrow account until the limited partnership was formed. This Siers denies.

The trial court determined there was substantial compliance in good faith sufficient to create the formation of a limited partnership. That determination, however, is not necessary herein. If there was no limited partnership, there was a partnership agreement and the money was paid under its terms. Any variance in the name would be immaterial because defendant could not have been misled or confused as to the money he was accused of embezzling.

As early as 1905, in Higbee v. State, 74 Neb. 331, 104 N. W. 748, this court held that the allegation of the information that the party injured is a corporation is sufficiently sustained by proof that it is a de facto corporation. Proof of the regularity of the proceedings to incorporate is not necessary.

Nationally, some of the more recent cases, with which we agree, hold that proof of the existence of a legal entity capable of owning property is not required in an embezzlement prosecution. In Straub v. People (1961), 145 Colo. 275, 358 P. 2d 615, the court held that failure to prove the corporate existence of the company named in the information did not constitute a material variance and the trial court correctly denied defend-

ant's motion for a directed verdict. It said: "The name of the owner of property stolen is material only to the extent it serves a descriptive purpose. Another is to show that it is not the property of the accused, and that the accused may know whose property he is alleged to have stolen so that he may be prepared to meet or refute the charge at the trial. And, where the identity of the alleged owner is sufficiently established and the defendant is not deceived or misled to his prejudice, no error results."

In State v. Scofield (1968), 7 Ariz. App. 307, 438 P. 2d 776, the defendant was convicted of embezzlement from a car rental agency after he failed to return the car. On appeal he challenged the sufficiency of proof showing that Econo-Car International, Inc., of Tucson, the alleged owner, was a legal entity capable of owning the automobile. The Arizona court affirmed the judgment of the trial court, stating: "Under the allegations of this information, there is no confusion as to the identity of the motor vehicle which defendant is charged with having embezzled from 'Econo-Car International Inc. of Tucson.' The proof is uncertain as to whether this was a separate corporation or merely a trade name under which an individual by the name of Earl J. Mort did business. * * * whoever or whatever owned this automobile, it is crystal clear that the defendant did not and that this charge relates to a particular motor vehicle which he rented from a lessor doing business under the name indicated in the information. We hold that if there was a variance from the information or a failure of proof, it was as to matters basically immaterial."

In State v. Colson (1972), 17 Ariz. App. 598, 499 P. 2d 726, defendant appealed his conviction for embezzlement, urging there was a fatal variance between the information and the proof at trial. The information charged defendant with theft by embezzling property from Dana Brothers Shamrock Service Station, his employer. The evidence showed that although the business

name of the service station was Dana Brothers Shamrock Service Station, it was actually a sole proprietorship owned by one Ferrell Dana. The court held the variance was immaterial, stating: "It is clear to us that the defendant was put on notice that he was being charged with the crime of embezzling money from his employer, irrespective of the exact name of the owner alleged in the information. We hold as in Scofield, that if there was a variance between information and proof, it was as to a basically immaterial matter."

Defendant's requested instruction No. 2, which was given by the trial court, was as follows: "If you find that George Siers had the authority and discretion to make trades for Pathfinder II, Ltd. and that in the exercise of his discretion he did invest the funds of Pathfinder II, Ltd. and lost them, then you must return a verdict of not guilty." In this instruction it is evident the defendant was predicating his defense on the existence of Pathfinder II, Ltd., and his authority and discretion to make trades for it. Whether or not Pathfinder II, Ltd., existed as a legal entity was not an essential element of the crime and is immaterial on the record herein.

In this case, if there was a variance from the information, or a failure of proof, it was as to a matter basically immaterial under the facts herein. This case is not unlike State v. Reynolds (1900), 65 N. J. L. 424, 47 A. 644. There, a defendant on trial for embezzling funds of the company for which he had been acting as an agent and to which he had been returning funds collected for it, was not permitted to challenge the organization or existence of the company. The court there said: "A defendant * * * will not be permitted, when charged with embezzlement of its funds, to say, 'It is true, I took the money as you say, but you are not the company,' and to call in question its organization of existence. By his own agreement he recognizes the company, and his agency of it, and he will not be per-

mitted to claim immunity by simply asserting that it does not exist. * * * One who receives money or other things of value in the assumed exercise of authority as an agent for another, is estopped to deny such authority in a criminal as well as civil action."

The investors in Pathfinder II, Ltd., entrusted their funds to the defendant during the formative stages of the partnership on the assumption that he was organizing a limited partnership. He testified he had completed its organization by securing the additional partners. It would be a travesty of justice to permit the defendant to go free because he did not complete the existence of the limited partnership. He admitted receiving the money. He admitted using it to cover losses in the Rick Murphy account. The material issue was not the existence of Pathfinder II, Ltd., but whether or not the defendant, George J. Siers, as an agent of Pathfinder II, Ltd., received funds and whether or not he did then convert or embezzle the funds in violation of the law of embezzlement under the charge which is brought in the information.

Defendant does not specifically argue his sixth assignment of error in his brief. Pursuant to our rules, we consider it waived. In any event, our reading of the record would indicate it is without merit.

Defendant's seventh assignment of error alleges the sentence imposed is excessive in light of defendant's record of service to his community and the offense charged. Defendant has not argued this assignment. We assume, however, that he is contending the court should have granted probation. We have repeatedly held this court on appeal will not overturn an order or sentence of the trial court which denies probation unless there has been an abuse of discretion. State v. Schleis (1976), 196 Neb. 327, 243 N. W. 2d 50. There has been no abuse of discretion herein.

Defendant's eighth assignment of error complains that the court erred in imposing civil judgment in the

amount of $17,500. This alleged error was not assigned in defendant's motion for a new trial. The assignment, therefore, is not properly before us. See State v. Fauth (1974), 192 Neb. 502, 222 N. W. 2d 561, in which we held: "In criminal cases alleged errors of the trial court not referred to in the motion for a new trial will not be considered on appeal." For the legality of civil judgment in a criminal case, see Coffey v. County of Harlan (1907), 204 U. S. 659, 27 S. Ct. 305, 51 L. Ed. 666. That case involved an appeal to the United States Supreme Court from a Nebraska prosecution under an embezzlement statute.

Defendant's last assignment of error is as follows: "The Court erred in imposing sentence under Section 28-539 R. R. S. Neb. 1943 because the evidence and the charge failed to apply to this section." The initial complaint, the information, the evidence adduced at the trial, and the instructions indicate that defendant was charged with a violation of section 28-538, R. R. S. 1943. The court in imposing sentence did state that the defendant had been found guilty of a violation of section 28-538 and section 28-539, R. R. S. 1943. This was a misstatement. Section 28-539 covers conversion by clerks, apprentices, or servants. There is no question defendant was charged and tried under section 28-538. The erroneous reference to section 28-539 was at most error without prejudice.

For the reasons given, the judgment of the District Court is affirmed.

AFFIRMED.

BRODKEY, J., dissenting.

The majority opinion states that it "would be a travesty of justice to permit the defendant to go free because he did not complete the existence of the limited partnership." It is also a travesty of justice for a court in its zeal to make bad law simply because it is faced with a hard case. Apparently the law now is that a person can be charged and convicted of embezzling

from a partnership which may or may not exist, without a jury determination that the partnership does exist. Such a result defies logic, common sense, and prior law, and I must respectfully dissent.

The defendant in this case was alleged to have embezzled from Pathfinder II, Ltd., a limited partnership. Essential parts of the information charged that (1) Siers was "the agent of Pathfinder II Ltd, a limited partnership"; (2) as agent of Pathfinder II, Ltd., a limited partnership, Siers embezzled money, "all of which money was and is the property of the said Pathfinder II Ltd, a limited partnership, his principal"; and (3) Siers embezzled said money "without the consent of the said Pathfinder II Ltd, a limited partnership, his principal, * * *." Thus Pathfinder II, Ltd., and that entity alone, was the alleged victim of the embezzlement.

The record reflects that at the close of the State's case the defendant moved to dismiss on the grounds the evidence adduced did not establish there was ever any embezzlement from a partnership called Pathfinder II, Ltd.; and that that entity did not exist, as the legal requirements for the creation of a limited partnership had not been fulfilled. Again, at the end of all evidence, the defendant renewed his previous motion of dismissal, stating, among other grounds for dismissal, that in order for there to be an embezzlement of the property owned by Pathfinder II, Ltd., as was charged in the information, that entity had to have been in existence; and that the evidence adduced showed that this had not occurred. In ruling upon this facet of defendant's motion, the court stated: "And now that the Defendant has moved to dismiss on the basis of no showing that there was a partnership, the Court must, in response to that Motion, make a determination from the facts as a matter of law, rather than leaving it for the Jury, because the Court, once having determined it for this purpose, the Court sees no reason why it

should then set aside its own finding and submit the question of whether or not there was a partnership formed as a question to the Jury.

"So, the Court * * * now determines that at the times in question as recited in the Information, Pathfinder II, Limited was a limited partnership and in existence, and that the Motion of the Defendant should be overruled and the fact question submitted to the Jury as to whether or not the Defendant, George J. Siers, as an agent of the Pathfinder II, Limited, a limited partnership, received funds and whether or not he did then convert or embezzle the funds in violation of the law of embezzlement under which the charge is brought in the Information." In its subsequent instructions to the jury, the court frequently referred to "Pathfinder II, Ltd., a limited partnership," but nowhere in those instructions submitted the question of the existence of that limited partnership to the jury for its determination. Defendant argues that this was clearly erroneous and prejudicial to his defense, and that it withdrew from consideration of the jury the determination of an essential element of the offense with which the defendant was charged.

The applicable embezzlement statute involved in this case is section 28-538, R. R. S. 1943, which, so far as material, provides: "If any clerk, *agent*, attorney at law, servant, factor or commission agent of any private person *or any copartnership*, except apprentices and persons within the age of eighteen years, or if any officer, attorney at law, agent, clerk, servant, factor or commission agent of any incorporated company or joint stock company, including all persons employed or commissioned by any employer, corporate or private, shall embezzle or convert to his own use, fraudulently take or make away with or secrete with intent to embezzle or fraudulently convert to his own use, without the assent of his or her employer or employers, or the owner or owners thereof, any money, goods, rights in action

or other valuable security or effects whatever, belonging to any other persons, body politic or corporate, or which is partly the property of any other persons, body politic or corporate, and partly the property of such officer, attorney at law, agent, clerk, servant, factor or commission agent of any incorporated company * * * which shall have come into his or her possession or care in any manner whatsoever * * *, every person so offending shall be punished in the manner provided by law * * *." (Emphasis supplied.)

The requirements for forming a limited partnership are contained in the Nebraska Uniform Limited Partnership Act, sections 67-201 to 67-232, R. R. S. 1943. Section 67-202 provides that two or more persons desiring to form a limited partnership shall sign and swear to a certificate, containing 14 specified items of information, and file the certificate for record in the office of the county clerk of the county in which the principal place of business of the partnership shall be situated. It is then provided in subsection (2) of section 67-202, that: "A limited partnership is formed if there has been *substantial compliance in good faith* with the requirements of subsection (1) of this section." (Emphasis supplied.) Under the foregoing provision, it would seem that "substantial compliance in good faith," even though less than full compliance, would still result in the creation of a limited partnership, somewhat analogous to the status of a de facto corporation. In the instant case, it is clear from the evidence that there was far from complete compliance with the provisions of the foregoing section, but whether there was sufficient compliance to constitute "substantial compliance in good faith" would clearly be a question of fact for the determination of the jury.

The record contains the comments of the court in overruling defendant's motion for a directed verdict indicating the court was following the general rule that the existence of a partnership depends upon the agree-

ment of the parties, and their intention is to be ascertained from all the evidence and circumstances, as set out in cases such as Baum v. McBride, 143 Neb. 629, 10 N. W. 2d 477 (1943), and Carlson v. Peterson, 130 Neb. 806, 266 N. W. 608 (1936); and also the rule set out in Lewis v. Gallemore, 173 Neb. 211, 113 N. W. 2d 54 (1962), that the existence and scope of a partnership may be evidenced by a written or oral agreement, or implied by the conduct of the parties and what was done by them. I have no quarrel with the foregoing rules but wish to point out that they did not involve limited partnerships, and further that even those cases hold that the existence of a partnership is a question of fact under the evidence.

Therefore the question of what will constitute a partnership is a matter of law for the court to determine, but whether a partnership exists under the facts presented in evidence is a fact question which is for the jury to decide. See, Lewis v. Gallemore, *supra;* Baum v. McBride, *supra;* Johnson v. Graf, 162 Neb. 396, 75 N. W. 2d 916 (1956); 59 Am. Jur. 2d, Partnership, § 81, p. 994; 68 C. J. S., Partnership, § 59, p. 484. Cases in other jurisdictions have specifically held that the question of whether a partnership existed in an embezzlement case is one of fact for the jury to determine. Adams v. State, 43 Ala. App. 281, 189 So. 2d 354 (1966).

Since the trial court in this case took from the jury the question of whether Pathfinder II, Ltd., in fact existed, the question in this case is whether proof of the existence of the limited partnership was essential to the State's case. The majority contends without citation of authority, that a determination on the issue of the existence of Pathfinder II, Ltd., was not necessary, for: "If there was no limited partnership, there was a partnership agreement and the money was paid under its terms. Any variance in the name would be immaterial because defendant could not have been misled or confused as to the money he was accused of embezzling."

The majority continues: "Whether or not Pathfinder II, Ltd., existed as a legal entity was not an essential element of the crime and is immaterial on the record herein. * * * In this case, if there was a variance from the information, or a failure of proof, it was as to a matter basically immaterial under the facts herein." Finally, the majority opinion states that: "The material issue was not the existence of Pathfinder II, Ltd., but whether or not the defendant, George J. Siers, as an agent of Pathfinder II, Ltd., received funds and whether or not he did then convert or embezzle the funds in violation of the law of embezzlement under the charge which is brought in the information."

In so stating, the majority ignores fundamental and long-established principles of law, and oversimplifies the issues. It is elementary that the burden of proof at a trial for embezzlement rests, as in other criminal cases, upon the prosecution to establish every material allegation against the defendant beyond a reasonable doubt. What must be alleged must be proved. 26 Am. Jur. 2d, Embezzlement, § 48, p. 601. See, also, Yost v. State, 149 Neb. 584, 31 N. W. 2d 538 (1948). It is a universal rule that the defendant must be convicted, if at all, of the particular offense charged in the information, and that the allegations and proof must correspond. See, State v. Watson, 272 N. C. 526, 158 S. E. 2d 334 (1968); Scarboro v. State, 207 Ga. 449, 62 S. E. 2d 168 (1950); 42 C. J. S., Indictments and Informations, § 254, p. 1273.

It is well-established that where there is a conflict in the evidence it is error for the trial court to determine any question of fact involved in a criminal case. In Goldsberry v. State, 66 Neb. 312, 92 N. W. 906 (1902), we held that in the trial of an information charging a felony, the presiding judge is without lawful authority to determine an issue, or any of the questions of fact involved in the issue. That power belongs exclusively to the jury, regardless of the state of the evidence. The

jury must be fully satisfied of the existence of every fact constituting an element of the crime charged, and it cannot be assumed that it is so satisfied because it ought to be. In Goldsberry, the court stated: "For the error committed by the court in taking away from the jury the question of fraudulent intent, and authorizing them to find defendants guilty without finding that the intent charged was proved by the evidence beyond a reasonable doubt, the sentence must be reversed, *although there is much reason to suppose the result of the trial would have been the same if the case had been submitted under proper instructions.*" (Emphasis supplied.)

The general rule in a majority of jurisdictions in the United States is that in embezzlement cases the information must allege, and the State must prove, who owned the property allegedly embezzled. Sisk v. State, 260 So. 2d 485 (Miss., 1972); Meyers v. State, 193 So. 2d 728 (Miss., 1967); Loker v. State, 2 Md. App. 1, 233 A. 2d 342 (1967), affirmed 250 Md. 677, 245 A. 2d 814, cert. den. 393 U. S. 1082, 89 S. Ct. 862, 21 L. Ed. 2d 774; Commonwealth v. Nichols, 206 Pa. Super. 352, 213 A. 2d 105 (1965); Scarboro v. State, *supra;* and, see, Annotation, 88 A. L. R. 485, and supplements thereto. It is also a general rule that where ownership of embezzled property is in an association, partnership, corporation, or the like, the information must allege and prove such organization to be an entity capable of owning property. State v. Roberts, 14 N. C. App. 648, 188 S. E. 2d 610 (1972); State v. Monk, 193 Ore. 450, 238 P. 2d 1110 (1951); 26 Am. Jur. 2d, Embezzlement, § 39, p. 592. This latter rule has been modified in some states by statute. See State v. Fulper, 16 Ariz. App. 357, 493 P. 2d 524 (1972). Nebraska has no similar statute. Finally, in an information for embezzlement the agency or fiduciary relationship of the accused should be clearly stated. 26 Am. Jur. 2d, Embezzlement, § 40, p. 593.

The information in this case clearly charged the de-

fendant with embezzling from Pathfinder II, Ltd., a limited partnership. Obviously the existence of that entity was material to the State's case, since, under the rules stated above, it was required to prove who owned the property and what the fiduciary relationship was between the defendant and the victim of the embezzlement. If Pathfinder II, Ltd., did not exist, how could it have owned the property allegedly embezzled, *and how could Siers have been its agent?* The majority itself states that the material issue herein is "whether or not the defendant, George J. Siers, *as an agent of Pathfinder II, Ltd.,* received funds and whether or not he did then convert or embezzle the funds in violation of the law of embezzlement under the charge which is brought in the information." (Emphasis supplied.) If Pathfinder II, Ltd., did not exist, Siers could not have been its agent, and could not have converted or embezzled its funds.

In reaching its conclusion, the majority confuses the issue by discussing the question of whether there was a variance between the allegations and the findings of fact, and refers to cases which deal with questions of variance. Variance between pleadings and proof is not the main issue here; the defendant was charged with embezzling from Pathfinder II, Ltd., and was found guilty of embezzling from that entity. The issue presented in this appeal is whether the trial court erred in taking from the jury a question of fact which was material to the State's case, that question being whether the alleged victim in fact existed. In none of the cases cited by the majority did the trial court take from the jury the question of whether the victim of the crime existed. In each one there was a question as to the proper name of the victim, as alleged in the information, but not one of whether the entity from which property was embezzled or converted was an ongoing entity, which existed in fact and was conducting business. In none of those cases did the trial court hold as

a matter of law that the victim of the alleged crime existed.

Cases in Nebraska have long established that proof of the existence of a corporation is essential when the alleged victim of an embezzlement or larceny is a corporation. In Braithwaite v. State, 28 Neb. 832, 45 N. W. 247 (1890), we held in a larceny case that it was necessary to prove that the victim was at least a de facto corporation. This same rule has been followed in Sharp v. State, 61 Neb. 187, 85 N. W. 38 (1901); Higbee v. State, 74 Neb. 331, 104 N. W. 748 (1905); Bloom v. State, 95 Neb. 710, 146 N. W. 965 (1914); Peterson v. State, 115 Neb. 302, 212 N. W. 610 (1927); and Larson v. State, 107 Neb. 800, 186 N. W. 981 (1922). All these cases indicate that there must be some evidence of the existence of the corporate victim of the alleged crime presented to the jury in order to sustain a conviction, even if the evidence is only sufficient to show de facto existence.

The cases cited by the majority from only two jurisdictions, Arizona and Colorado, do not deal with the failure of the trial court to submit all material issues of fact to the jury, and therefore, they do not convincingly dispose of the issue raised in this appeal. State v. Scofield, 7 Ariz. App. 307, 438 P. 2d 776 (1968), and State v. Colson, 17 Ariz. App. 598, 499 P. 2d 726 (1972), were cases decided under a specific Arizona statute. In Scofield, the information alleged that the defendant embezzled property from a corporation, and the proof in the case was conflicting as to whether this entity was a separate corporation or a trade name under which an individual did business. There was no issue in the case as to whether the corporation was in existence in terms of doing business and in terms of possessing the property embezzled, and the trial court made no ruling as a matter of law that the corporation was a separate corporation. The court held that the variance between the proof and the information, if any,

was immaterial. Colson involved precisely the same kind of question, and the Scofield decision was followed. Both cases relied on A. R. S., § 13-681 et seq., which provides that: "No variance between the allegations of an indictment, information or bill of particulars, which state the particulars of the offense charged, * * * and the evidence offered in support thereof shall be ground for the acquittal of the defendant." Nebraska's variance statute, section 29-1502, R. R. S. 1943, is much narrower, and deals with variance in names.

In Straub v. People, 145 Colo. 275, 358 P. 2d 615 (1961), the defendant contended that the State had not proved the corporate existence of the alleged victim of a larceny, "The Continental Oil Company." The State had called three witnesses who testifed that they were employees of said company, and that the stolen property belonged to that company. The substance of the court's holding was that this evidence was sufficient to establish the identity of the alleged owner of the stolen property. The trial court had not held that the corporation existed as a matter of law, and had not taken that issue from the jury. More recent Colorado cases hold that in a larceny case it is necessary to at least show that the named victim had possession, control, and custody of the chattel which was the alleged object of the larceny. Diebold v. People, 175 Colo. 96, 485 P. 2d 900 (1971); Kelley v. People, 166 Colo. 322, 443 P. 2d 734 (1968). In the case at hand, if Pathfinder II, Ltd., did not exist in any respect, de facto or otherwise, it could not have had possession, control, and custody of the money allegedly embezzled, and the question of the existence of the entity was a fact question for the jury.

The majority places great weight on the fact that the defendant predicated his defense on the existence of Pathfinder II, Ltd. This fact does not relieve the State of its burden to prove all the material facts relevant to the crime charged, and does not allow the trial court to take factual issues from the jury. The

jury may well have found that Pathfinder II, Ltd., did exist, particularly in light of the defendant's own testimony, but this possibility does not warrant upholding the trial court's error of failing to submit a material factual question to the jury. See Goldsberry v. State, *supra*.

The judgment should be reversed and the cause remanded for a new trial.

McCown, J., joins in this dissent.

Clinton, J., respondente.

This is not a "hard case." The simple issue is whether there was a material variance between the allegations of the information and the proof which prejudiced the defendant in his defense of the charge. State v. Nelson, 182 Neb. 31, 152 N. W. 2d 10. The dissent treats the issue as if proof of technical compliance with the provisions of the Uniform Limited Partnership Act by the persons who invested or intended to invest their money was an element of the crime of embezzlement. The technicalities involved in the formation of the entity in which ownership of embezzled or stolen property rests is not and never has been an element of the crime.

It is fundamental that an indictment or information must allege the ownership of the property embezzled or stolen. The purpose is to identify the offense so that the accused will know with certainty whose property he is alleged to have embezzled or stolen so that he may know what he must defend, and also so that the crime is sufficiently identified that if there is an attempt to try him again he may prove former jeopardy. 1 Underhill, Criminal Evidence (5th Ed.), § 85, pp. 139, 140; State v. Davis, 61 N. J. Super. 536, 161 A. 2d 552; People v. Bristow, 8 Ill. App. 3d 805, 291 N. E. 2d 189.

The record in this case undisputedly establishes that the defendant knew and knows what funds and whose funds he was charged with embezzling. His defense was that he had authority from the owners to invest the funds as he did. It is also clear that the jury was

properly instructed as to what it must find as to the identity and ownership of the funds the defendant was alleged to have appropriated before the jury could find the defendant guilty. It is crystal clear that the defendant was not hampered in any way in meeting the charges.

The majority opinion does not announce new law as the dissent implies, although some courts have taken the same hyper-technical view as the dissent. Numerous decisions in addition to those cited in the majority opinion hold that variances such as may here exist are immaterial. State v. Nelson, *supra* (ownership of stolen cattle alleged to be in ranch foreman in whose possession the cattle were, rather than in the ranch owner who, in fact, owned the cattle); Commonwealth v. O'Brien, 12 Allen 183 (Mass., 1866) (individual partner and partnership); People v. Leonard, 106 Cal. 302, 39 P. 617 (corporation or de facto corporation); State v. Harrison, 347 Mo. 1230, 152 S. W. 2d 161 (Missouri Federal Relief Commission and Federal Relief Commission); Helms v. State, 40 Ala. App. 622, 121 S. 2d 104 (some difference in the name of the individual from whose custody property was taken); Hunt v. State, 229 Ga. 869, 195 S. E. 2d 31 (Valley Produce, Co., Inc., and Val Produce, Co., Inc.); Garza v. State, 171 Tex. Cr. App. 267, 347 S. W. 2d 265 (proprietor of a beer garden and owner of juke box located in the garden); United States v. Spatuzza, 331 F. 2d 214 (New York Central "System" and New York Central Transport Company); Gaynor v. State, 247 Ind. 470, 217 N. E. 2d 156 (allegation of joint ownership sustained by proof of ownership in one of the individuals); State v. Zammar (Mo. App.), 286 S. W. 2d 54 (Katz Drug Store and Katz Drug Company, Inc.).

Can anyone doubt that had the defendant been acquitted he could successfully plead double jeopardy should he again be charged with embezzling property of the individuals who were or intended to become Path-

finder II, Ltd.? Should the proposition contended for by the dissent become law, the effect ultimately would be not merely a new trial, but the acquittal of a defendant who, if the jury's findings of fact are to be given any credence, is guilty.

BRODKEY, J., responding to respondente.

As pointed out in the dissenting opinion, the principal issue in this case is not variance, but rather the failure to submit to the jury for its determination an essential element of the charge against the defendant. If this constitutes being "hyper-technical," then so is the Constitution of the United States.